HASTINGS MUTUAL INSURANCE COMPANY, Appellant,

v.

HALATEK et al., Appellees.

[Cite as *Hastings Mut. Ins. Co. v. Halatek,* 174 Ohio App.3d 252, 2007-Ohio-6923.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 06–MA–102.

Decided Dec. 11, 2007.

Comstock, Springer & Wilson Co., L.P.A., and Thomas J. Wilson, for appellant.

Anzellotti, Sperling, Pazol & Small Co., L.P.A., and Adam L. Sperling, for appellee John R. Giannini.

Harry A. Tipping, for appellee Tracy R. Halatek.

David & Young and Larry Wilkes, for appellee Stella Skinner, Administrator of the Estate of Brian Skinner, Deceased.

John Susany, Scott J. Robinson, and Carrie M. Rouse, for appellee Erie Insurance Company.

Maureen A. Walsh, for appellee Progressive Preferred Insurance.

Reid, Marshall & Wargo, Ltd., and Andrew M. Wargo, for appellee Clerac, Inc., d.b.a. Enterprise Rent–A–Car.

---

DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Hastings Mutual Insurance Company, appeals a decision of the Mahoning County Common Pleas Court, finding that it owes liability coverage to defendant, Tracy R. Halatek, under a Business Auto Policy issued by it to Gutter King. The central issues of this case are whether (1) the trial court

properly considered deposition testimony taken in another case, (2) defendant was an owner of the corporate named insured, and (3) defendant was an insured under the Business Auto Policy issued to the corporate named insured.

{¶ 2} In November 2002, defendant, Tracy R. Halatek, rented a car for her brother, Brian Skinner, from Clerac, Inc., d.b.a. Enterprise Rental Car ("Enterprise"). On January 1, 2003, Skinner was driving the car with John R. Giannini as his passenger when he crashed. Skinner was killed and Giannini was injured.

{¶ 3} Because Halatek was the one who had rented the car for Skinner, Giannini sued her in Mahoning County Common Pleas Court for the injuries he received in the crash. *Giannini v. Halatek*, Mahoning C.P. No. 04–CV–2451. During the course of that litigation, Halatek's deposition was taken on July 14, 2005.

{¶ 4} Halatek had been married to Robert Halatek, who owned Gutter King, Inc. Gutter King had a Business Auto Policy ("BAP") with plaintiff-appellant, Hastings Mutual Insurance Company.

{¶ 5} The Hastings policy provided coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance, or use of a covered 'auto.'" The declarations indicate that there is $300,000 of liability coverage for "Symbol 1" covered autos. Symbol 1 describes a covered auto as "any" auto.

{¶ 6} "Who is an insured" is defined as "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." The policy defines "you" and "your" as the "Named Insured shown in the Declarations." The declarations for the policy period May 16, 2002 to May 16, 2003 (the time period covering the accident) lists Gutter King as the named insured.

{¶ 7} On March 29, 2005, Hastings filed a declaratory judgment action and an amended complaint on April 20, 2005, which is the subject of the present appeal. Named as defendants were the following: Tracy R. Halatek; John R. Giannini; Stella Skinner, in her capacity as Administrator of the Estate of Brian Skinner, deceased; Erie Insurance Company ("Erie"); Progressive Preferred Insurance and Progressive Insurance Company (collectively, "Progressive"); and Clerac, Inc. Hastings sought a declaration that it did not owe Halatek a duty to defend or indemnify her against Giannini's claims in *Giannini v. Halatek*, Mahoning C.P. No. 04–CV–2451.[1]

---

1.  Clerac, Inc. also sued Tracy Halatek in Mahoning County Common Pleas Court for breach of contract based on monies due under the rental car agreement with Enterprise. *Clerac, Inc. v. Halatek*, Mahoning C.P. No. 04–CV–4480. In its declaratory judgment action, Hastings also

{¶ 8} On December 6, 2005, Hastings filed a motion for summary judgment. Hastings argued that its policy did not cover Giannini's claims because Halatek was not an employee of its insured, Gutter King. Erie, Progressive, and Giannini each filed cross-motions for summary judgment and opposed Hastings's motion. Relying on Tracy Halatek's deposition in *Giannini v. Halatek*, Mahoning C.P. No. 04–CV–2451, they argued that Tracy Halatek was a co-owner of Gutter King and, therefore, covered under its BAP policy with Hastings.

{¶ 9} Hastings filed a reply memorandum in support of its summary judgment motion and in opposition to Erie, Progressive, and Giannini's cross-motions for summary judgment, advancing three principal arguments. First, Hastings argued that the trial court could not rely on Tracy Halatek's deposition because it was not a party to that litigation and was not represented at the deposition. Second, even considering the deposition, Hastings argued that it established that she was not a co-owner at the time of the January 1, 2003 accident. Third, Hastings argued that Skinner was not an employee of Gutter King acting within the course and scope of employment and that coverage was therefore precluded under *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256.

{¶ 10} On June 8, 2006, the trial court overruled Hastings's motion and granted the motions for summary judgment filed by Erie, Progressive, and Giannini. The trial court also made the following findings: (1) Tracy Halatek was "part owner" of Gutter King at the time of the accident, (2) the car driven by Skinner at the time of the accident was driven with Halatek's permission, (3) Halatek was an "insured" under the BAP at the time of the accident, and (4) Halatek's deposition was correctly considered by the court in its determination of the summary judgment motions. This appeal followed.

## PROPRIETY OF HALATEK'S DEPOSITION TESTIMONY

{¶ 11} Hastings raises two assignments of error. Hastings's first assignment of error states:

{¶ 12} "The trial court erred in considering evidence not properly before the court under Civ.R. 56(C)."

{¶ 13} Under this assignment of error, Hastings presents one issue for review. It states:

---

sought a declaration that it did not owe Halatek a duty to defend or indemnify her in that litigation. However, that litigation was later settled and dismissed.

{¶ 14} "Whether the trial court erred as a matter of law in considering as evidence a deposition transcript taken in another case in which the moving party had no opportunity to cross-examine the witness."

{¶ 15} A trial court has discretion when considering which evidence is appropriate under Civ.R. 56 when making a summary judgment determination. See *Bell v. Holden Surveying, Inc.,* 7th Dist. No. 01 AP 0766, 2002-Ohio-5018, 2002 WL 31115653, at ¶ 16. " 'Abuse of discretion' means unreasonable, arbitrary, or unconscionable." *State ex rel. Cranford v. Cleveland,* 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 24.

{¶ 16} Tracy Halatek's July 14, 2005 deposition was taken in *Giannini v. Halatek,* Mahoning C.P. No. 04–CV–2451. However, it appears that the deposition was inadvertently given the caption for this case (i.e., Hastings's declaratory judgment action)—*Hastings v. Halatek,* Mahoning C.P. No. 05 CV 1134—and filed accordingly on March 15, 2006.

{¶ 17} Hastings argues that it was improper for the trial court to consider the deposition in determining the summary judgment motions mainly because it was not represented at the deposition and given the opportunity to cross-examine Halatek. Hastings cites Civ.R. 32, which deals with the use of depositions in court proceedings. Specifically, it cites Civ.R. 32(A), which states:

{¶ 18} "At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, *may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof * * *.*" (Emphasis added.)

{¶ 19} Civ.R. 56(C) details permissible summary judgment evidence. Specifically, it states that the trial court can consider "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact."

{¶ 20} Citing *Dillon v. Med. Ctr. Hosp.* (1993), 98 Ohio App.3d 510, 648 N.E.2d 1375, Hastings argues that a deposition taken in another case does not fall within the type of evidence permitted by Civ.R. 56(C).

{¶ 21} In *Dillon,* the plaintiff sued the defendant hospital alleging negligence on the part of its nurses for failing to conduct proper checks of the plaintiff. The trial court granted a motion for summary judgment filed by the defendant hospital with regard to the alleged negligence of its nurses. The plaintiff appealed. Apparently, the plaintiff had sued the attending physicians in a separate action in which depositions were taken. Just prior to getting into the factual history of the case, the Fourth District Court of Appeals noted in a footnote that although the trial court had considered the depositions filed in the

previous action between the plaintiff and the physicians, the parties did not file those depositions in the action between the plaintiff and the defendant hospital. *Dillon,* 98 Ohio App.3d at 511, 648 N.E.2d 1375, fn. 1. The court also noted that the depositions filed in the previous case did not fall into any of the Civ.R. 56(C) categories. Id. The court observed, however, that the parties had not objected to the fact that the depositions were not filed in the subject case and that such failure to object constituted waiver of any error on appeal. Id.

{¶ 22} Erie, Progressive, and Giannini cite *Gerken v. Mir* (Nov. 30, 1995), 3d Dist. No. 10–95–7, 1995 WL 723157, in support of their assertion that Halatek's deposition was properly considered in the summary judgment proceedings below. In *Gerken,* defendant physician was not a party to the case when an expert opined in a deposition that he was negligent in his treatment of the plaintiff. Following that revelation, defendant physician was added as a party. The trial court refused to consider the deposition in summary judgment proceedings and granted summary judgment in favor of the defendant physician based on his uncontroverted affidavit regarding his treatment of the plaintiff. The plaintiff appealed.

{¶ 23} The Third District Court of Appeals held that the trial court erred in excluding the deposition. While acknowledging Civ.R. 32(A), the court held that "when the issue is merely determining whether a genuine issue of material fact exists, the deposition should be allowed for that purpose only, regardless of whether it would later be inadmissible against the party at trial." Citing *Napier v. Brown* (1985), 24 Ohio App.3d 12, 14, 24 OBR 33, 492 N.E.2d 847. The court in *Napier* also reasoned that such "a deposition is at least as good as an affidavit" which is allowed by Civ.R. 56 and, "therefore, should be employed whenever an affidavit would be permissible." Id. at 15, 24 OBR 33, 492 N.E.2d 847. The Third District agreed with *Napier*'s conclusion that "such a deposition may be considered as an affidavit to determine if a genuine issue of material fact exists for trial so long as the testimony is based upon the deponent's personal knowledge and the deponent is presently available to testify at trial where the admissibility, credibility, and weight of the testimony will be considered."

{¶ 24} Hastings's reliance on *Dillon* is misplaced for three reasons. First, *Dillon* only suggested that a deposition not *filed* in the appropriate case may be excluded from consideration at summary judgment if objected to. In this case, Halatek's deposition was filed in the present action on March 15, 2006, albeit inadvertently. Second, the *Dillon* court offered no case law in support of that proposition. Third, the proposition appeared in a footnote and footnotes are generally regarded only as dicta. See *Constellation NewEnergy, Inc. v. Pub. Util. Comm.,* 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, at ¶ 16;

*McIntyre v. Ohio Elections Comm.* (1993), 67 Ohio St.3d 391, 399, 618 N.E.2d 152.

{¶ 25} The reasoning contained in *Gerken* and *Napier* is more persuasive. Here, Halatek's deposition should be considered just as good as an affidavit, which is permissible under Civ.R. 56(C). A review of Halatek's deposition reveals that it was based on her personal knowledge. Also, there has been no suggestion that Halatek is not presently available to testify at trial where the admissibility, credibility, and weight of her testimony could be considered. Consequently, the trial court did not abuse its discretion when considering Halatek's deposition for the purpose of summary judgment only.

{¶ 26} Accordingly, Hastings' first assignment of error is without merit.

## SUMMARY JUDGMENT

{¶ 27} Hastings's second assignment of error states:

{¶ 28} "The trial court erred in overruling Hastings' motion for summary judgment and granting the defendants' motions for summary judgment."

### Standard of Review

{¶ 29} A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties. Civ.R. 57 and R.C. 2721.01 et seq. Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy. *Lessak v. Metro. Cas. Ins. Co. of N.Y.* (1958), 168 Ohio St. 153, 155, 5 O.O.2d 442, 151 N.E.2d 730. When a declaratory judgment action is disposed of by summary judgment, our review of the trial court's resolution of legal issues is de novo. *King v. W. Res. Group* (1997), 125 Ohio App.3d 1, 5, 707 N.E.2d 947. Hence, summary judgment is proper when "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129.

### Halatek's Status with Gutter King

{¶ 30} Under this assignment of error, Hastings presents two issues for review. The first issue presented for review states:

{¶ 31} "Whether the trial court erred as a matter of law in ruling that Tracy Halatek was part owner of Gutter King at the time of the accident."

{¶ 32} Hastings argues that Halatek had no property interest in Gutter King and, therefore, was not covered under its policy with Hastings since the only "named insured" on the policy is Gutter King. In support of its assertion that Halatek did not have an interest in Gutter King, Hastings states that Halatek testified that she did not own any stock in the company. Hastings also points out that Halatek never received any compensation for her interest in the business upon her divorce from Robert Halatek. Last, Hastings argues that after the Halateks began having marital problems, Tracy Halatek quit working at Gutter King and stopped receiving paychecks, which was approximately two years prior to their divorce.

{¶ 33} Erie, Progressive, and Giannini argue that Tracy Halatek's deposition establishes that she was a named insured under the policy and was an owner, the vice president, and an employee of Gutter King at the time of the January 1, 2003 accident. Specifically, Erie responds to each of Hastings's arguments in turn.

{¶ 34} First, Erie argues that whether or not Tracy Halatek had stock certificates for Gutter King is not dispositive of ownership. Erie cites the Official Comment on the definition of shareholder found in R.C. 1701.01(F), which states that "a person can be a subscriber to shares even though his name does not appear on the books of the corporation as such." 1955 Committee Comment to R.C. 1701.01. Erie also cites *Marriott v. Columbus, S. & H.R. Co.* (1907), 76 Ohio St. 599, 81 N.E. 1190, and *Simmons Hardware Co. v. Stokes*, 16 OCC 145, 1898 WL 1366, for a similar proposition.

{¶ 35} Second, Erie argues that Tracy Halatek did receive compensation for divesting her interest in Gutter King in the final divorce decree. Concerning the disposition of Robert and Tracy Halatek's marital assets, Erie refers to Tracy Halatek's testimony where she stated, "He got the business and I got the house." Erie posits that this testimony establishes that Robert Halatek surrendered his half-interest in the marital residence for Tracy Halatek's half-interest in Gutter King.

{¶ 36} Third, Erie argues that Tracy Halatek was employed by Gutter King and received compensation from there until the divorce in July 2003. Erie cites the portion of her testimony where she stated that she was still going to work at Gutter King on and off depending on how their relationship was at the time. Erie also refers to her testimony that although she had stopped receiving paychecks, Robert Halatek was keeping those paychecks and paying for the house (even though he was not living there).

{¶ 37} Even after viewing the evidence most strongly in favor of Hastings, the evidence demonstrates that reasonable minds could come to but one conclusion—that Tracy Halatek had an ownership interest in Gutter King at the time of the accident.

{¶ 38} Tracy Halatek and her husband started the Gutter King business together in 1984. They were the sole owners and the business was not incorporated until some time thereafter. He was president of the company and she was vice president. Her duties included working around the office (e.g., answering the phone), going with Robert to put together estimates, cleaning gutters with Robert, and taking materials to job sites.

{¶ 39} In 1998, Robert bought Tracy a Dodge Caravan in Gutter King's name and placed the vehicle under its insurance. It was the only vehicle and insurance that Tracy had then, including at the time of the accident. She used the vehicle for both Gutter King business and for her personal use.

{¶ 40} Hastings's argument concerning the lack of stock certificates is inconsequential. As indicated, the business was not initially incorporated. There is no evidence to establish whether there were any stock certificates issued after it was incorporated or to whom they may have been issued if they were. Despite the absence of stock certificates, Tracy Halatek's testimony established that she had a viable interest in Gutter King. She testified:

{¶ 41} "Q   All right. And you received paychecks from Gutter King. You worked there until the time that you discussed previously; is that correct?

{¶ 42} "A   Yes.

{¶ 43} "Q   Did you get a paycheck or a payment regardless of how many hours you put in? Was it always the same, or did they do hourly?

{¶ 44} "A   No, I was—I was part owner. The secretary wasn't going to sit down and mark down my hours.

{¶ 45} "Q   So you were paid because you were an owner, as opposed to the work you did there?

{¶ 46} "A   Yes."

{¶ 47} It was approximately three to four years prior to their divorce that Robert and Tracy began experiencing marital difficulties. Concerning her involvement with Gutter King at that time, Tracy testified:

{¶ 48} "A   I was still going over [to Gutter King] on and off. It's hard to explain, because, see, he would come home for a couple days, and he'd leave for a couple days. And then he'd make everything seem like it was okay, so I'd go over to the office and help him. Then it would start all up again, so I just left. And that's when I got a job over at the fairground and started working over there and just stayed away from the business."

{¶ 49} Concerning the financial remuneration her ownership interest in Gutter King yielded at that time, she added:

{¶ 50} "A   I didn't get paychecks from him.   At the end he kept them.   He was making the house payment with them.   He was taking my check and his check and paying the house, and he wasn't living there."

{¶ 51} Therefore, it appears that Tracy received compensation from Gutter King up until the divorce.   Even if she had not received any compensation from Gutter King in the time period leading up to their divorce, that does not mean that she did not still retain an ownership interest in that business.

{¶ 52} Robert and Tracy divorced in July 2003, approximately six months after the accident.   Tracy received the marital residence and its attendant equity and Robert received the Gutter King business.   This further tends to establish that Tracy retained an ownership in Gutter King until the divorce.

{¶ 53} In sum, even after viewing the evidence most strongly in favor of Hastings, the evidence demonstrates that reasonable minds could come to but one conclusion—that Tracy Halatek had an ownership interest in Gutter King at the time of the accident.

*Halatek's Status as an Insured under the Policy*

{¶ 54} Hastings's second issue presented for review under this assignment of error states:

{¶ 55} "Whether the trial court erred as a matter of law in ruling that Tracy Halatek was an 'insured' at the time of the accident pursuant to Hastings' policy."

{¶ 56} The declarations page of the Business Auto Policy in this case lists Gutter King as the named insured.   Therefore, Gutter King is the "you" in the policy.   Hastings acknowledges that under *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, the "you" in a policy where the named insured is a corporation means the employees of that corporation acting within the course and scope of employment.   However, Hastings maintains that coverage does not extend to this case because Tracy Halatek was not acting within the course and scope of employment with Gutter King. Hastings points out that she rented the car for her brother and was, by that time, totally removed from her former duties at Gutter King.

{¶ 57} As we indicated under Hastings's first issue present for review, Tracy Halatek was part-owner of Gutter King at the time of the accident.   Therefore, as the trial court correctly determined, Tracy Halatek was an insured.   She rented a car and expressly granted permission to Skinner to drive it.

{¶ 58} Hastings's reliance on *Galatis* is misplaced.   *Galatis* held that "[a]bsent specific language to the contrary, a policy of insurance that names a corporation as an *insured for uninsured or underinsured motorist coverage* covers a loss sustained by an employee of the corporation only if the loss occurs within the

course and scope of employment." (Emphasis added.) 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at paragraph two of the syllabus. Hastings's policy is distinguishable from the policy before the Supreme Court in *Galatis*. Unlike the policy language the Supreme Court considered in *Galatis*, the Hastings policy designation of a corporate "you" as an insured does not relate to UM/UIM coverage. As the Tenth District observed in *Chickey v. Watts*, 10th Dist. Nos. 04AP–818 and 04AP–1269, 2005-Ohio-4974, 2005 WL 2303745, at ¶ 57–58:

{¶ 59} "Rather, it relates to *liability* coverage arising out of the use of a hired or non-owned auto. Under UM/UIM coverage provisions, insurers generally agree to pay sums the insured is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury the insured sustained in an accident arising out of the ownership, maintenance or use of an uninsured or underinsured automobile. The ambiguity in a UM/UIM policy's designation of the insured solely as a corporation arises from the fact that a corporation cannot occupy or operate an automobile and cannot suffer bodily injury or death. [*Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 664, 710 N.E.2d 1116.] No such ambiguity exists in the context of *liability* coverage. The * * * policy's liability coverage does not require that the insured suffer bodily injury or death to qualify for coverage. It simply requires that, as a result of situations covered by the policy, the insured become legally obligated to pay damages."

{¶ 60} "Although a corporation cannot occupy or operate an automobile or suffer bodily injury or death, a corporation can be held liable for damages. Thus, unlike in the context of UM/UIM coverage, the basis for finding ambiguity in the designation of a corporate 'you' as an insured does not exist in the context of liability coverage. * * * "

{¶ 61} Last, we address an argument advanced by defendant-appellee, John R. Giannini, that Tracy Halatek's status as insured can be established simply by looking within the four corners of the BAP.

{¶ 62} In the BAP, "Who is an insured" is defined as "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow[.]" The policy defines "you" and "your" as the "Named Insured shown in the Declarations."

{¶ 63} The declaration for the policy period May 16, 2002 to May 16, 2003 (the time period covering the accident) lists Gutter King, Inc. as the named insured. The declaration also lists an additional "miscellaneous" coverage called "drive other car" coverage. This is typically referred to and recognized as a broadened-coverage endorsement. *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 53. It specifically names Robert and Tracy Halatek. "A broadened-coverage endorsement extends a commercial motor vehicle insurance policy's

coverage to a list of specific individuals when those individuals or their spouses use vehicles not otherwise covered under the policy." Id.

{¶ 64} Since Tracy Halatek's name appears in the declaration, Giannini concludes that this alone qualifies her as a named insured, citing this court's decision in *Am. Mfr. Mut. Ins. Co. v. Kurtz*, 7th Dist. No. 04 MA 53, 2005-Ohio-6452, 2005 WL 3293813. *Kurtz* involved a BAP that also contained a "drive other car," broadened-coverage endorsement which named specific individuals. The appellee in *Kurtz* attempted to advance a *Scott–Pontzer* ambiguity argument in order to establish underinsured motorist ("UIM") coverage for himself under a BAP issued to his employer. This court examined the "drive other car," broadened-coverage endorsement similar to the one in this case. We stated:

{¶ 65} "Normally when a policy is alleged to contain a *Scott–Pontzer* ambiguity, but then names specific individuals within the definition of named insureds, the ambiguity is resolved because the word 'you' may refer to those specific individuals. *Treadway v. Jevcak*, [158 Ohio App.3d 767, 2004-Ohio-5588, 822 N.E.2d 423], ¶ 10, In fact, *Galatis* itself concluded that when specific individuals are listed on a 'Drive Other Car Coverage—Broadened Coverage for Named Individuals' endorsement, the ambiguity discussed in *Scott–Pontzer* is removed. *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 53–54. Thus, it does not appear that appellee may rely in any way on the *Scott–Pontzer* analysis as to the policy at issue in this case.

{¶ 66} "Appellee's argument disregards the fact that the 'named insured' is not simply a corporate entity, but includes seven individuals (Lee Schwebel, Joseph Schwebel, Alyson Winick, Joseph Winick, Barry Solomon, Frances Solomon, and Paul Schwebel; see Drive Other Car Coverage endorsement, CA 99 10, p. 1). Appellee's argument appears to be solely founded on the premise that the BAP's definition as to who is insured is ambiguous, when it not only clearly explains the circumstances required for coverage, but specifically names non-corporate entities as insureds. Thus, under no circumstance may we reach the argument that this language is so ambiguous that Appellee can possibly be entitled under any theory to UIM coverage as a matter of law under the principles set forth in *Scott–Pontzer*." Id. at ¶ 66–67.

{¶ 67} Giannini's reliance on our decision in *Kurtz* is misplaced. First, we decline to extend *Kurtz* to the facts of this case for the same reason we rejected Hastings's course-and-scope-of-employment argument above. Here, the BAP relates to coverage as it arises out of the underlying liability policy, not uninsured or underinsured motorist coverage. Second, in *Galatis*, the Ohio Supreme Court acknowledged that listing specific individuals in the broadened-coverage endorsement was reflective of the parties' intent not to extend uninsured motorist coverage to every employee and employee's family member. However, the court

stopped short of holding that including individuals on a broadened-coverage endorsement prevents "you" from being ambiguous. The court reasoned, "[t]hat ruling would require that paying an additional premium actually reduces the coverage available under the policy. This is neither a just result nor a logical consistency." *Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 55.

{¶ 68} Here, the language of Hastings's liability policy is not ambiguous and does not concern UM/UIM coverage. "You" (i.e., Tracy Halatek) gave Skinner "permission" to drive "a covered 'auto' you own, hire or borrow." Therefore, Hastings must provide coverage under the liability section of its policy for Skinner's alleged negligent or tortious conduct.

{¶ 69} Accordingly, Hastings's second assignment of error is without merit.

{¶ 70} The judgment of the trial court is hereby affirmed.

Judgment affirmed.

VUKOVICH and WAITE, JJ., concur.