[Cite as *Shops at Boardman Park, L.L.C. v. Target Corp.*, 2016-Ohio-7283.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THE SHOPS AT BOARDMAN PARK, LLC f/k/a THE SHOPS AT BOARDMAN PARK PARTNERSHIP NO. 1, et al. | ) ) ) ) | CASE NO. 13 MA 0188 |
| PLAINTIFFS-APPELLANTS | ) ) | |
| VS. | ) ) | OPINION |
| TARGET CORPORATION | ) ) | |
| DEFENDANT-APPELLEE | ) | |

CHARACTER OF PROCEEDINGS:   Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 11 CV 3929

JUDGMENT:                          Affirmed.  Remanded.

JUDGES:
Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated:  October 5, 2016

[Cite as *Shops at Boardman Park, L.L.C. v. Target Corp.*, 2016-Ohio-7283.]
APPEARANCES:

For Plaintiffs-Appellants:

    Atty. David Barbee
    Atty. Joseph C. Bishara
    Roth, Blair, Roberts, Strasfeld & Lodge
    100 East Federal Street, Suite 600
    Youngstown, Ohio 44503

    Atty. Michael J. Morley
    Atty. Ronald G. Galip
    721 Boardman-Poland Road
    Boardman, Ohio  44512

For Defendant-Appellee:

    Atty. Timothy T. Reid
    Atty. Dale Markworth
    Mansour, Gavin, Gerlack
      & Manos Co., LPA
    North Point Tower
    1001 Lakeside Avenue, Suite 1400
    Cleveland, Ohio 44114

    Atty. Michael A Ponto
    Atty. David Snieg
    Faegre Baker Daniels LLP
    2200 Wells Fargo Center
    90 South Seventh Street
    Minneapolis, MN  55402-3901

WAITE, J.

**{¶1}** This is an appeal of summary judgment granted in favor of Defendant-Appellee Target Corporation ("Target") in a declaratory judgment action. The action was filed by Plaintiff-Appellant The Shops at Boardman Park, LLC ("The Shops LLC") in order to obtain a judicial definition of the phrase "Common Area supervisory program" that was contained within the parties' "Operations and Easement Agreement" ("OEA"). The OEA defined the parties' combined properties as the "Shopping Center." This 19.5-acre Shopping Center constituted a defined retail area within a larger shopping complex (also known as The Shops at Boardman Park) in Boardman, Ohio. The OEA was signed in 2001. The OEA governed, among other things, the system of paying for the common areas of the parties' adjacent properties. After Target decided to take responsibility for maintaining its own common areas in 2009, a dispute arose over whether Target continued to be liable for a pro rata share of the cost of supervising and administering the common areas of the Shopping Center. The Shops LLC asked the court to give a specific definition to the phrase "Common Area supervisory program" that would support its separate claim for money damages relating to the administration of the common areas. Target filed a counterclaim in declaratory judgment and proffered a different definition. After competing motions for summary judgment were filed, the trial court accepted Target's definition. The Shops LLC then filed this interlocutory appeal.

**{¶2}** We find no reversible error in the trial court's decision to use the definition provided by Target. The trial court correctly interpreted the disputed phrase in the context of the entire OEA, found Appellant's proposed definition to be in

conflict with the OEA, and provided a definition of the entire phrase consistent with, and based upon, the language of the OEA itself. Appellant's assignments of error are overruled and the judgment of the trial court is affirmed. The case is remanded to the trial court to resolve any outstanding claims between the parties.

<u>History of the Case</u>

**{¶3}** Target and The Shops LLC own adjacent tracts of land in Boardman, Ohio. Target operates a retail store on its tract. The Shops LLC leases space in its remaining tract of land to various retail entities. On September 20, 2001, Target and The Shops LLC entered into an OEA, the purpose of which was to "effectuate the common use and operation of their respective Tracts". (OEA, p. 1.) The OEA refers to the combined areas of the parties' two tracts as the Shopping Center, which is in turn located within the larger shopping complex called The Shops at Boardman Park.

**{¶4}** The OEA defines "Common Area" as "all areas within the exterior boundaries of the Shopping Center, exclusive of (i) any Building and (ii) any Outside Sales Area * * *." (OEA, p. 2.) The Common Area includes parking lots, sidewalks, driveways, signs, and lighting, among other things. The OEA provided that The Shops LLC was initially responsible for the maintenance of the Common Area of the Shopping Center, with Target being responsible to pay 43% as its proportionate share of the "Common Area Maintenance Costs" (a defined term in the OEA). The OEA does not define or govern any areas outside the parties' tracts designated in the OEA, which covers approximately 19.5 acres of a much larger shopping area. Section 4.2.7 of the OEA allowed Target to take over and assume maintenance of

the Common Area of its 8.156-acre tract. Target took advantage of this provision in 2009, and this is not disputed by the parties. The OEA required The Shops LLC to continue to be responsible for certain Common Area functions, such as providing insurance for the Common Area, maintaining utility lines, and "maintain the Common Area supervisory program, if any." (OEA, 4.2.7, p. 25.) Target was required to continue paying its pro rata share of the costs of these specifically designated functions. (OEA, 4.2.7, p. 25.)

{¶5} A dispute arose over whether Target was required to pay a pro rata share of various charges allegedly associated with the common areas. Specifically, The Shops LLC believed that Target was responsible for a share of the cost of two persons employed to conduct oversight and administration of certain aspects of the larger shopping complex. The Shops LLC filed a breach of contract complaint in the Mahoning County Court of Common Pleas on December 12, 2011. Another entity, Handel Investments, LLC, also filed a claim, but has been dismissed from the case.

{¶6} The Shops LLC filed an amended complaint on June 3, 2013, alleging a breach of contract as well as bringing a declaratory judgment action in which it requested the court to define the phrase "Common Area supervisory program" as stated in Section 4.2.7 of the OEA. The Shops LLC encouraged the court to accept the definition as "fees and expenses of a supervisor and a secretary for such supervisor on site, who were and are in charge of overseeing, administering and coordinating the Common Areas of the shopping center." (6/3/13 Amended Complaint, p. 4.) Target filed a counterclaim on June 21, 2013, proposing a different

definition. Target suggested that the definition of "Common Area supervisory program" meant "any program implemented for policing or securing the Common Area within the Shopping Center." (6/21/11 Answer and Counterclaim, p. 5.) The parties filed competing motions for partial summary judgment on the declaratory judgment aspect of the complaint.

**{¶7}** The case was referred to a magistrate, who ruled on October 3, 2013, that Target's definition was correct. The magistrate granted partial summary judgment to Target and overruled The Shops LLC motion for partial summary judgment. The Shops LLC filed objections to the magistrate's decision, and on November 22, 2013, the trial court adopted the magistrate's decision and ruled in favor of Target. This timely interlocutory appeal followed. The trial court included the phrase "[t]here being no just cause for delay" as required by Civ.R. 54(B) in order to designate the interlocutory judgment a final appealable order. Appellant's assignments of error are related and will be treated together.

Final Appealable Order Status

**{¶8}** Although this appeal is an interlocutory appeal, the trial court has included the language required by Civ.R. 54(B) to designate its judgment as a final appealable order. An order that is determined to be final with "no just reason for delay" as set forth in Civ.R. 54(B) still must qualify as a final appealable order under R.C. 2505.02 or some similar statute defining final appealable orders. Declaratory judgment decisions are generally recognized as reviewable final orders pursuant to R.C. 2505.02(B)(2): "An order is a final order that may be reviewed, affirmed,

modified, or reversed, with or without retrial, when it is one of the following: * * * (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment." See also, *Gen. Acc. Ins. Co. v. Ins. Co. of N. America*, 44 Ohio St.3d 17, 22, 540 N.E.2d 266, 272 (1989). There are situations, though, in which a decision regarding declaratory judgment may not constitute a final appealable order. For example, in *Stiggers v. Erie Ins. Group*, 8th Dist. No. 85418, 2005-Ohio-3434, the court held that:

> [A]s a general rule, a court fails to fulfill its function in a declaratory judgment action when it disposes of the issues by journalizing an entry *merely sustaining or overruling a motion for summary judgment without setting forth any construction of the document or law under consideration.* (Emphasis added.)

*Id.* at ¶ 7, quoting *Nickschinski v Sentry Ins. Co.,* 88 Ohio App.3d 185, 189, 623 N.E.2d 660 (8th Dist.1993).

**{¶9}** In the instant appeal, the trial court did not merely sustain or overrule the competing motions for summary judgment. The court completely analyzed the narrow proposition put before it in the declaratory judgment action and made a very clear and specific ruling interpreting the phrase in question. The rights and duties of the parties were determined, and the trial court fulfilled its function by construing the document under review. Thus, even though there is a breach of contract claim pending before the trial court, the court's ruling on the declaratory judgment action, in the context of this appeal, constitutes a final appealable order.

Assignments of Error One and Two

The trial court erred in overruling Shops' Motion for Partial Summary Judgment.

The trial court erred in sustaining Target's Motion for Summary Judgment.

{¶10} This appeal involves a summary judgment ruling in a declaratory judgment action. Appellant contends that the trial court should have adopted its proposed definition of the phrase "Common Area supervisory program" contained in Section 4.2.7 of the OEA rather than Target's proposed definition. The Shops LLC took the position that the definition should be "fees and expenses of a supervisor and a secretary for such supervisor on site, who were and are in charge of overseeing, administering and coordinating the Common Areas of the shopping center." Target's definition was "any program implemented for policing or securing the Common Area within the Shopping Center."

{¶11} A trial court's determination of matters of law in a declaratory judgment action are reviewed *de novo* on appeal. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586, ¶ 13; R.C. 2721.04. Similarly, summary judgment is reviewed *de novo* on appeal. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). Finally, if the terms of the contract

are clear and unambiguous, the interpretation of the contract language is a question of law reviewed *de novo* on appeal. *State ex rel. Parsons v. Fleming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A contract is ambiguous if its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation. *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 55, 716 N.E.2d 1201 (2d Dist.1998).

{¶12} The purpose of judicial interpretation of a written instrument is to ascertain and give effect to the intent of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). A contract will be read as a whole, and the intent of each party will be gathered from a consideration of the whole. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). Common words in a written contract will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clearly evidenced from the face or overall content of the contract. *McConnell v. Hunt Sports Ent.*, 132 Ohio App.3d 657, 675, 725 N.E.2d 1193 (10th Dist.1999).

> In the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain.

*Farmers' Nat. Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 94 N.E. 834 (1911), paragraph six of the syllabus.

{¶13} Although Appellant would like us to define the individual words of the phrase "Common Area supervisory program" in isolation, the trial court properly considered the phrase as a whole in the context of the entire OEA. In fact, the phrase in question is part of the larger paragraph of the OEA that allowed Target to opt out of the payment of common area fees and to take over the maintenance of its own common areas. Section 4.2.7 states, in pertinent part:

> Target shall have the right, upon giving not less than sixty (60) days' written notice to Operator, to take-over and assume the maintenance of the Common Area upon the Target Tract. Following the effective date of such take-over and assumption, Target shall maintain the Common Area on its Tract, and shall pay all costs and expenses incurred in connection therewith; provided, however, Operator shall continue to (i) maintain the Common Utility Lines of the Shopping Center * * *, (ii) maintain the Common Area supervisory program, *if any*, (iii) insure the Common Area on the Target Tract under the Operator's Common Area public liability insurance program * * *, and (iv) maintain any Sign upon which a Target panel is attached. Upon such take-over and assumption, Target shall be released from the obligation to contribute towards Common Area Maintenance costs for the balance of the

Common Area, except with respect to those functions identified above *

* *. (Emphasis added.)

(OEA, 4.2.7, p. 25.)

**{¶14}** It is clear that Appellant's proposed interpretation of the phrase "Common Area supervisory program, if any" is inconsistent with the OEA because Appellant's interpretation would require that some type of supervisory program must always exist, ignoring the plain meaning of the words "if any," which imply that the program is optional. It is clear that the words "if any" have additional meaning to the parties, since the other provisions of Section 4.2.7 for which Target will continue to have some liability for pro rata contribution (maintenance of utility lines, insurance, maintenance of signs) do not contain the phrase "if any." As the trial court noted, Appellant's interpretation would require a supervisory program to exist under all circumstances, thus rendering the phrase "if any" meaningless.

**{¶15}** Further, the OEA prohibits Appellant from recovering Common Area maintenance costs from its tenants for administrative costs, but Appellant's proposed definition directly attempts to recover administrative costs. Section 4.2.2 states:

Operator shall operate and maintain the Common Area in accordance with the requirements of Section 4.2.1. Operator shall expend only such funds as are reasonably necessary for the operation and maintenance of the Common Area * * *. For the purpose of this OEA, Common Area Maintenance Costs shall not include:

* * *

(H)   Operator's profit, *administrative and overhead costs* including, but not limited to:  * * * legal, accounting and *administrative service*; * * *.

**{¶16}** Appellant's proposed definition would make administrative costs part of the Common Area Maintenance Costs in reference to Section 4.2.7 of the OEA, the opt-out provision, when they are clearly excluded as Common Area Maintenance Costs in Section 4.2.2.  Administrative costs, and the recoupment of administrative costs, are dealt with in other sections of the OEA.  One cannot rely on common dictionary definitions of undefined words or phrases to make a contract mean the opposite of what it clearly expresses in another section of that same contract.

**{¶17}** The trial court's interpretation of the phrase "Common Area supervisory program" as "any program implemented for policing or securing the Common Area within the Shopping Center" is completely consistent with the remainder of the OEA and gives plain meaning to the language of the contract.  Section 4.2.1(H) defines "Supervisory Personnel" as "[p]roviding professional supervisory personnel for the Common Area, if reasonably required."  Although this is a somewhat circular definition, it does include the idea that supervisory personnel, in the context of the OEA, are professionals of some sort, who would not be administrative professionals because administrative costs are not part of Common Area Maintenance Costs.  One common online dictionary defines "supervise" as "keep watch over (someone) in the interest of their or others' security" and includes the following sentence as an example of usage:  "prisoners were supervised by two officers". Oxford Dictionaries, http://www.oxforddictionaries.com/us/definition/american_english/supervise

(accessed August 23, 2016). The trial court's definition, consistent with the Oxford Dictionary, allows the phrase "Common Area supervisory program" to have a common and usual meaning without distorting other aspects of the OEA in the process.

{¶18} Appellant would have us resort to extrinsic evidence to assist in defining the phrase under review. Extrinsic evidence is relevant only when the language of a contract is ambiguous. "Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Enterprises, Inc.,* 64 Ohio St.3d 635, 597 N.E.2d 499 (1992), at syllabus. Because the plain ordinary usage of the words, in the context of the entire OEA, provides a clear, unambiguous meaning, there is no need to rely on extrinsic evidence to determine the meaning of the phrase in question.

{¶19} For all of these reasons, we overrule Appellant's two assignments of error. The trial court correctly granted partial summary judgment to Target in its declaratory judgment counterclaim, and was also correct to overrule The Shops LLC's similar request. The court defined the phrase "Common Area supervisory program" as "any program implemented for policing or securing the Common Area within the Shopping Center," which is consistent with the OEA and with the common ordinary usage of the undefined words in the phrase. The judgment of the trial court is affirmed. As this matter involves an interlocutory appeal, the case is hereby

remanded to the trial court for further proceedings on any remaining claims between the parties.

DeGenaro, J., dissents; see dissenting opinion.

Robb, J., concurs.

DeGENARO, J., dissenting.

{¶20} In declaratory judgment actions, a court is required to completely construe the documents at issue and then enter judgment specifying the rights and responsibilities of the parties pursuant to the court's construction of the debated terms in order to constitute a final appealable order. The trial court adopted Target's proposed definition of the disputed language but did not further construe the language to give effect to either party's rights or responsibilities under the Operation and Easement Agreement. Since the judgment entry does not meet the requirements for a final appealable order the appeal should be dismissed.

{¶21} When a declaratory judgment action is disposed of by summary judgment, review of the trial court's resolution of legal issues is de novo. *Hastings Mut. Ins. Co. v. Halatek*, 174 Ohio App.3d 252, 2007-Ohio-6923, 881 N.E.2d 897, ¶ 29 (7th Dist.). As noted by the majority, appellate courts may only review final orders on appeal, and inclusion of the language from Civ.R. 54(B) does not make a non-final order final. Section 3(B)(2), Article IV of the Ohio Constitution; R.C. 2501.02; Civ.R. 54(B).

{¶22} Section 2505.02(B) of the Revised Code sets forth five categories of final orders. Pertinent to this appeal are the following provisions:

(A) As used in this section:

(1) "Substantial right" means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect.

(2) "Special proceeding" means an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity.

* * *

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

* * *

(2) An order that affects a substantial right made in a special proceeding[.]

**{¶23}** Declaratory judgment actions were not recognized at common law or in equity, but created by statute, and as such are a special proceeding; therefore, an order which affects a substantial right entered in a declaratory judgment action is a final appealable order. *General Acc. Ins. Co. v. Insurance Co. of North America*, 44 Ohio St.3d 17, 22, 540 N.E.2d 266 (1989).

**{¶24}** However, Ohio courts have held that "[w]hen a trial court enters a judgment in a declaratory judgment action, the order must declare *all* of the parties' rights and obligations in order to constitute a final, appealable order." (Emphasis added.) *Stiggers v. Erie Ins. Group*, 8th Dist. No. 85418, 2005-Ohio-3434, ¶ 5; *see also William Powell Co, v. OneBeacon Ins. Co.,* 1st Dist. No. C–130681, 2014-Ohio-3528, ¶ 10 (declaratory judgment that does not "completely construe the documents is not a final, appealable order even though the entry contains Civ. R. 54(B) language"); *Michaels v. Michaels*, 9th Dist. 09CA009717, 2010-Ohio-6052, ¶ 7 ("in order for a trial court to enter a judgment in a declaratory judgment action, it must declare 'all of the parties' rights and obligations[.] ").

**{¶25}** Courts have also cautioned that moving for summary judgment in declaratory judgment actions is a disfavored practice. *See Griewahn v. United States Fid. & Guar. Co.*, 160 Ohio App.3d 311, 2005-Ohio-1660, 827 N.E.2d 341, ¶ 9 (7th Dist.). "The purpose of a declaratory judgment action is to set forth the rights and responsibilities of the parties and does not contain any material issues of fact. But a motion for summary judgment does not necessarily accomplish that goal since a trial court might not set forth the rights and responsibilities of the parties when denying such a motion." *Id.*, quoting *Am. Modern Home Ins. Co. v. Hagopian,* 3d Dist. No. 03–02–23, 2003-Ohio-342, 2003 WL 173710, ¶ 7.

**{¶26}** In the present action, both Shops and Target sought declaratory relief, asking the trial court to define the term "Common Area supervisory program." The parties appear to have stipulated by their respective prayers for declaratory relief that, as to this issue, there are no genuine issues of material fact, and that a

declaratory judgment of contract construction under R.C. 2721.03 would aid in the settlement of the dispute "quickly and conclusively."

{¶27} The Eighth District has decided two cases that parallel this action's procedural posture. In *Stiggers, supra*, the court dismissed an action for lack of a final, appealable order concerning a supplemental complaint filed by a party seeking declaratory relief in addition to collecting a monetary judgment against an insurer. The plaintiff had selected a local construction business to build an addition onto her home. *Id.* at ¶ 2. The plaintiff did not believe that the work was satisfactory, and the addition was never finished. *Id.* The plaintiff obtained a default judgment against the construction company, who was insured at the time by the defendant. In a supplemental complaint filed pursuant to R.C. 3929.06, the plaintiff sought the enforcement of the judgment against defendant through a declaratory action under R.C. 2505.02. After both parties filed for summary judgment on the declaratory claim, the trial court granted summary judgment to the defendant insurance company. The trial court reasoned that although the local construction company was insured by the defendant, the present action only involved damage claims arising from the new construction, and therefore, R.C. 3929.06 could not apply. *Id.* at ¶ 4. Specifically, the trial court stated that the plaintiff's claims were "in the nature of breach of contract or breach of warranty and do not trigger coverage under the insurance policy issue." *Id.*

{¶28} The Eighth District held that the trial court's summary judgment in favor of the insurer on the declaratory judgment claim did not adequately set forth the rights and responsibilities of the parties to constitute a final, appealable order. *Id.* at ¶ 9. The court determined that while there was "some reasoning" in the entry, i.e., the nature of the plaintiff's initial claims against the construction company, the entry itself was "too vague and unspecific" to "adequately advise the parties of their rights and obligations under the contract." *Id.* Therefore, under Civ.R. 54(B) and R.C. 2505.02, the judgment was not a final appealable order. *Id.* at ¶ 10.

{¶29} Second, in *Klocker v. Zeigler*, 8th Dist. No. 92044, 2009-Ohio-3102, the plaintiff, a private homeowner, filed a multi-count complaint that included a

declaratory judgment claim seeking, inter alia, a declaration of his rights and responsibilities under a clause contained in his deed granting him the right to pass over and use adjacent land owned by defendants. The plaintiff's claims arose from the actions of the Trustees of the Clifton Lagoon Trust, which owned the adjacent land referred to as the Strip. The plaintiff initiated this action when the defendants removed allegedly nonconforming driveway pavers from the Strip in front of the plaintiff's home without notice. *Id.* at ¶ 6-7. The plaintiff moved for partial summary judgment as to his declaratory judgment claim, and the defendants moved for summary judgment on all ten counts. *Id.* at ¶ 9.

**{¶30}** The trial court stated in its judgment entry:

[t]he court hereby grants summary judgment in favor of Defendants [(Trustees)]. The Strip of property at issue is owned by the Trustees and the Plaintiff wishes to place nonconforming pavers on Defendants' property. Plaintiff only has a limited right to pass over this property. Trustees are ordered to return the nonconforming pavers to Plaintiff immediately. This is a final appealable order.

*Id.*

**{¶31}** On appeal, the plaintiff argued that the trial court's judgment entry was insufficient as to construe the documents at issue in his declaratory judgment action, therefore rendering the order not final and appealable. *Id.* at ¶ 11. The Eighth District agreed, stating that the trial court did not fulfill its function "because it did not construe the documents at issue in the case and advise the parties of their rights and obligations." *Id.* at ¶ 14.

Although the court attempted to set forth some reasoning in its entry, it is undisputed that the Strip is owned by the Trustees and that Klocker has a limited right to pass over the property. The issue in the case is whether the Trustees, under the deeds at issue, have the authority to impose a "rule and regulation" that requires Klocker to install red

driveway pavers on the Strip of property in front of his home owned by the Trustees, and further, if they have such authority, whether such rule was ever properly promulgated. The trial court's order does not construe the documents to resolve this issue.

*Id.* at ¶ 14.

**{¶32}** Here, as in *Stiggers* and *Klocker*, the appeal centers on a summary judgment in a declaratory judgment action. And as in those cases, the judgment entry herein does not completely set forth the rights and responsibilities of the parties as required. It states that the definition of "Common Area supervisory program" relates to policing and security. This language gives an indication as to what rights and responsibilities are at issue in the Agreement, but fails to specifically define the rights and responsibilities of the parties in this action. For example, it does not explain how much is owed to Shops in light of this interpretation of the disputed term. Additionally, there is no mention of future costs or cost allocations once Target exercised its right to opt-out of the joint Common Area Maintenance program.

**{¶33}** Shops argues that even with Target's definition being the accepted meaning of the disputed term, Target still owes Shops unpaid dues under the terms of the Agreement. This argument reinforces the conclusion that the judgment is not a final, appealable order. The context of the term "Common Area supervisory program" arises in Section 4.2.7, which delineates the process and rights of the parties upon Target's opt-out of any Common Area maintenance program. Assuming that the trial court correctly identified the definition of "Common Area supervisory program" as "any program implemented for policing or securing the Common Area within the Shopping Center," the text of Section 4.2.7 would still provide textual support for a monetary claim for Shops.

**{¶34}** Section 4.2.7 of the Agreement states in part "Upon such take-over and assumption, Target shall be released from the obligation to contribute towards Common Area Maintenance costs for the balance of the Common Area, *except with respect to those functions identified above for which continued participation is*

*mandatory or elected*." This clause modifies an enumerated list within the same section. This list is preceded by the verb "shall." "Shall," amongst its varying definitions, has a particular legal use. Merriam-Webster defines this use as "used in laws, regulations, or directives to express what is mandatory." As such, it can be reasoned that the intentions of the parties was that even if Target exercised its opt-out provision, Shops would (and must) continue to provide specific functions and have specific responsibilities as relating to the Target tract. As a corollary, Target would not be released from its contributory obligation arising from Shops' mandatory responsibilities. The requirement to maintain a "Common Area supervisory program, if any" is one of the four specifically enumerated responsibilities within this section. From this plain language, it is evident that these four specific provisions would be in effect regardless of which party was responsible for maintenance of the Common Area on the Target Tract.

**{¶35}** If Shops was required under the mandatory language of this section to continue to provide "any program implemented for policing or securing the Common Area within the Shopping Center," the language that *excepts* Target *from release of obligation* in the same section would also render Target responsible for any costs. While the definition itself could aid in the determination of the rights, responsibilities, and intentions of the parties upon review of the contract, the definition standing alone does not delineate the rights and responsibilities of the parties.

**{¶36}** I disagree with the majority's ultimate conclusion, which rests in its interpretation of the Eighth District's *Stiggers* decision. A declaratory judgment is a final appealable order when it completely construes the documents at issue as to the rights and responsibilities of the parties in the action. In other words, the absence of any indication of the rights or responsibilities of either party in the judgment entry means that it not a final appealable order, and therefore it must be dismissed.

**{¶37}** The judgment entry here defined "Common Area supervisory program" as set forth in the parties' contract, but failed to give additional reasoning or an explanation of either party's rights or responsibilities in light of this definition. As the trial court did not completely construe the document language at issue as to the

rights and responsibilities of the parties as required in a declaratory judgment action, the judgment entry on the declaratory judgment is not a final appealable order, and this appeal should be dismissed.