[Cite as *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SWALLIE, | ) | |
| | ) | |
| APPELLANT and | ) | |
| CROSS-APPELLEE, | ) | |
| | ) | CASE NO. 09-MO-2 |
| V. | ) | |
| | ) | OPINION |
| ROUSENBERG ET AL., | ) | |
| | ) | |
| APPELLEES and | ) | |
| CROSS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from Court of Common Pleas of Monroe County, Ohio Case No. 2008-168

JUDGMENT:      Affirmed

APPEARANCES:

Hanlon, Estadt, McCormick & Schramm Co., L.P.A., and John R. Estadt, for appellant and cross-appellee.

Daniel P. Corcoran, James S. Huggins, and Theisen Brock, for appellees and cross-appellants.


JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: September 23, 2010

DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant and cross-appellee, Linda Swallie, appeals from a Monroe County Common Pleas Court judgment granting a declaratory judgment in favor of defendant-appellee, Carl Rousenberg, determining that Rousenberg's interest in a certain oil and gas estate is superior to Swallie's interest. Defendant-appellee and cross-appellant, Profit Energy Company, appeals from the same judgment, which also determined that Profit Energy does not have rights in the oil and gas estate.

{¶ 2} Swallie owns a parcel of property in Malaga Township. She and her predecessors in title acquired their interest in the property by way of a quit-claim deed executed on October 5, 1998, and recorded on October 6, 1998. This deed was from Helen Burkhart to her children Wilma Burkhart, Robert Crock, Hazel May, and Swallie. This conveyance was gratuitous, meaning it was not a purchase of the property for money. Wilma Burkhart, Crock, and May conveyed their interests in the property to Swallie by deed recorded April 5, 2005, making Swallie the sole owner of the property.

{¶ 3} Rousenberg purports to own the oil and gas rights on Swallie's property. An assignment of the oil and gas rights, including the leasing rights, was executed by Francis and Helen Burkhart on October 3, 1998, and recorded on October 13, 1998. Rousenberg himself was the notary for the written conveyance of the assignment of the oil and gas rights to him. For the oil and gas rights, Rousenberg paid the Burkharts $500.

{¶ 4} Profit Energy is the assignee of an oil and gas lease involving the property. On July 20, 1919, C.J. and Rebecca Burkhart and Lizzie Burkhart executed an oil and gas lease ("the lease") in favor of the Ohio Fuel Supply Company. The Ohio

Fuel Supply Company assigned the lease to Columbia Natural Resources, Inc., who in turn assigned it to Profit Energy by deed dated August 25, 1993.

{¶ 5} The lease was for "a term of twenty (20) years and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon." The lease further provided:

{¶ 6} "Lessee to deliver to the Lessor in tanks or pipe line one eighth (1-8) of the oil produced and saved from the premises and to pay for the product of each gas well from the time and while gas is marketed an annual rental as follows:  For a gas well making 100,00 [sic] feet daily, $50.00 per year; from 100,000 to 500,000 feet daily, $100.00 per year; from 500,000 to 1,000,000 feet daily, $150.00 per year; and any well making more than 1,000,000 feet daily, $200.00 per year."

{¶ 7} Profit Energy paid Helen Burkhart, and subsequently her estate, $50 rent per year from 1993 through 2007.  It did so despite the fact that the well had not produced oil and gas in paying quantities since January 1994.

{¶ 8} From 1998 to May 2008, Helen Burkhart and, after her death, Swallie received free gas for domestic use at the home located on the property.

{¶ 9} In 2008, the well bore on the property became damaged and adversely affected the flow of gas to Swallie's home.

{¶ 10} On April 16, 2009, Swallie filed a complaint for declaratory judgment against Rousenberg and Profit Energy.  Swallie sought a declaration (1) that the assignment of oil and gas rights from Francis and Helen Burkhart to Rousenberg is invalid as to her and her successors and (2) that the oil and gas lease from C.J. and

Rebecca Burkhart and Lizzie Burkhart is null and void pursuant to its terms. Swallie also asserted causes of action against Rousenberg and Profit Energy for conduct that was "fraudulent, egregious and outrageous" so as to entitle her to attorney fees and damages. Rousenberg and Profit Energy filed a counterclaim against Swallie for trespass and for damaging the well bore.

{¶ 11} Swallie filed a motion for summary judgment on all of her claims. Rousenberg and Profit Energy filed a competing motion for summary judgment on all claims except Profit Energy's claim for damage to its well bore.

{¶ 12} The trial court made lengthy findings and ultimately granted Rousenberg a declaratory judgment that the assignment of the mineral estate from Francis and Helen Burkhart to Rousenberg is superior to the interest of Swallie's deed from Helen Burkhart to Swallie and the others. It also determined that Profit Energy does not have rights in the mineral estate under the base lease between C.J. and Rebecca Burkhart and the Ohio Fuel Supply Company. The court declared the lease null and void pursuant to its terms. The court expressly found that there was no just cause for delay and that its order was final and appealable. The court set a hearing on damages. However, it stayed the damages hearing pending this appeal.

{¶ 13} Swallie filed a timely notice of appeal on April 16, 2009. Profit Energy filed a notice of cross-appeal on May 4, 2009.

{¶ 14} Swallie now raises one assignment of error that includes three sub-assignments of error. Her assignment of error states:

{¶ 15} "The Court of Common Pleas of Monroe County erred in granting appellee Carl F. Rousenberg the mineral estate at issue and thereby committed prejudicial error in refusing to declare appellant Linda Swallie the owner of record of the oil and gas interest under her farm."

{¶ 16} Swallie's first sub-assignment of error states:

{¶ 17} "The court erred in not holding that the October 3, 1998 conveyance from Francis J. and Helen E. Burkhart to Carl F. Rousenberg was improperly executed and to disqualify Rousenberg from the conveyance for acting as a notary public and grantee with a direct, material interest in the transaction."

{¶ 18} Pursuant to R.C. 5301.25(A), Swallie argues that the assignment from Francis and Helen Burkhart to Rousenberg was invalid because the deed was not properly executed and, therefore, could not be properly recorded. She points out that Rousenberg was the notary public who witnessed and notarized the conveying instrument. Swallie argues that because Rousenberg had a direct, material interest in the transaction, he could not notarize the instrument. And because the instrument was not properly witnessed or notarized, Swallie argues that it could not be recorded.

{¶ 19} R.C. 5301.01(A) provides:

{¶ 20} "(A) A deed, mortgage, land contract * * *, or lease of any interest in real property * * * shall be signed by the grantor, mortgagor, vendor, or lessor * * *. The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor, or by the trustee, before a judge or clerk of a court of record in this state, or a county auditor,

county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement."

**{¶ 21}** R.C. 5301.25(A) provides:

**{¶ 22}** "All deeds * * * and instruments of writing properly executed for the conveyance or encumbrance of lands * * * shall be recorded in the office of the county recorder of the county in which the premises are situated. Until so recorded or filed for record, they are fraudulent insofar as they relate to a subsequent bona fide purchaser having, at the time of purchase, no knowledge of the existence of that former deed, land contract, or instrument."

**{¶ 23}** Rousenberg and Profit Energy accept that the assignment was not properly acknowledged due to Rousenberg, the grantee, acting as the notary. Because the assignment was not properly acknowledged, it could not be recorded. Thus, according to R.C. 5301.25(A), the assignment would be fraudulent as it related to a *subsequent bona fide purchaser*.

**{¶ 24}** "A 'bona fide purchaser' is one who acquires legal title to real estate for valuable consideration, in good faith, and without knowledge or notice of another's equitable interest in that property." *Bergholtz Coal Holding Co. v. Dunning*, 11th Dist. No. 2004-L-209, 2006-Ohio-3401, at ¶ 32, citing *Shaker Corlett Land Co. v. Cleveland* (1942), 139 Ohio St. 536, at paragraph three of the syllabus. "A person who acquires title by gift or inheritance does not have the rights of a bona fide purchaser except to the extent that his predecessor in title had such rights." *Ferguson v. Zimmerman* (Jan. 16,

1986), 2d Dist. No. 9426. As such, Swallie's rights were only as good as Helen Burkhart's rights.

{¶ 25} Swallie was not a subsequent bona fide purchaser. It is undisputed that Swallie received her interest in the land as a gift.

{¶ 26} Hence, we must move on to determine whether the defectively acknowledged assignment passed title of the oil and gas rights from Francis and Helen Burkhart to Rousenberg.

{¶ 27} Swallie distinguishes the cases relied on by the trial court, *Citizens Natl. Bank in Zanesville v. Denison* (1956), 165 Ohio St. 89, and *Logan Gas Co. v. Keith* (1927), 117 Ohio St. 206, by pointing out that in those cases the defect existed with the formalities of notarization but in this case the defect concerns the self-interest of the grantee acting as a notary public. Instead, she relies on *Amick v. Woodworth* (1898), 58 Ohio St. 86. Swallie argues that we must follow the *Amick* decision as opposed to those decisions relied on by the trial court.

{¶ 28} The cases, however, do not appear to be at odds with each other as Swallie alleges. The Ohio Supreme Court has long held:

{¶ 29} "A grantee in an instrument for the conveyance or incumbrance of real property is disqualified, on grounds of public policy, to be an attesting witness to its execution, or to act in an official character in taking an [sic] certifying the acknowledgment of the grantor." *Amick*, 58 Ohio St. 86, at paragraph one of the syllabus. See also *Lucas v. Erlich* (June 23, 1993), 4th Dist. No. 92 CA 17; *Hallmark Mgt. v. Tartt* (May 23, 1985), 8th Dist. No. 49014.

{¶ 30} The *Amick* court further explained, "[t]he rule of disqualification must be of general application, and not made to depend upon the result of inquiry into the motives of the parties; for such a modification of the rule would necessarily open the door to the mischiefs it was designed to prevent." Id. at 100-101.

{¶ 31} Years later in *Denison*, 165 Ohio St. 89, the Ohio Supreme Court stated:

{¶ 32} "'A deed without acknowledgment, or defectively acknowledged, passes the title equally with one acknowledged, as against the grantor and his heirs; but without an effectual acknowledgment a deed can not be recorded so as to afford notice of the conveyance to all the world. Acknowledgment has reference, therefore, to the proof of execution, and not to the force, effect, or validity of the instrument. *** The validity of a deed at common law did not depend on its acknowledgment; and where acknowledgment is required, its object is the protection of creditors and purchasers.'" *Denison*, 165 Ohio St. at 94, quoting 7 Thompson on Real Property (Perm.Ed.) 416. See also *Taylor v. Kemp*, 7th Dist. No. 05-BE-15, 2005-Ohio-6787.

{¶ 33} The court noted an exception, however: "[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud." Id. at 95.

{¶ 34} The *Denison* court, relying on *Amick*, set out the effect of the recording of a defective deed: "[A] defectively executed mortgage when recorded does not establish a lien with priority over subsequently recorded mortgages properly executed." Id. at 95, citing *Amick*, 58 Ohio St. 86 at paragraph two of the syllabus.

{¶ 35} As can be gleaned from these cases, several things become clear. First, Rousenberg, as the grantee of the oil and gas rights, was disqualified to act as the notary who certified the Burkharts' acknowledgment. Second, because the Burkharts' acknowledgement was not properly certified, it could not be properly recorded. Third, even though the assignment could not be properly recorded, it still passed title as against the Burkharts and their heirs, as long as no fraud was involved. Fourth, since Swallie received her interest in the property as a gift from Helen Burkhart, Rousenberg's interest was superior to Swallie's, again, absent any fraud.

{¶ 36} In her complaint, Swallie asserted that Rousenberg obtained the assignment "by means of fraud, duress, undue influence, coercion and deception." This takes us into Swallie's second subassignment of error, which states:

{¶ 37} "There remains a number of genuine issues of material facts precluding the lower court from granting summary judgment herein, including but not limited to: the adequacy of the $500.00 consideration given by Carl F. Rousenberg for the oil and gas rights to the 123 acres owned by Francis and Helen Burkhart."

{¶ 38} Swallie asserts here that the trial court should have considered the adequacy of the consideration paid by Rousenberg to Francis and Helen Burkhart for the oil and gas rights to their 123 acres of property. She alleges that the $500 consideration was woefully inadequate. Swallie further asserts that Francis and Helen were elderly and senile at the time of the conveyance and the court failed to take this into consideration.

**{¶ 39}** Whether Swallie presented evidence as to each element of fraud was a question of fact. Because this case was decided on competing summary-judgment motions, the summary-judgment standard of review applies.

**{¶ 40}** In reviewing an award of summary judgment, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 552. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming* (1994), 68 Ohio St.3d 509, 511. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247-248.

**{¶ 41}** To prove a claim of fraud, the party alleging the fraud must prove:

**{¶ 42}** "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm-Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55.

{¶ 43} Swallie did not present evidence to create a genuine issue of material fact as to whether Rousenberg obtained his assignment from the Burkharts by fraud. In support of her fraud claim, Swallie submitted her own supplemental affidavit. In her affidavit, Swallie stated that on the date of the assignment, Francis Burkhart was 87 years old and Helen was 88 years old. She further averred that on that date both Francis and Helen were legally blind and would not have been able to read or understand the assignment. Finally, Swallie averred that Helen stopped driving in 1995 and Francis stopped driving in 1994, both due to loss of vision and inability to read road signs or judge distances.

{¶ 44} Construing this evidence in the light most favorable to Swallie, as we are required to do, there is not enough evidence to create a genuine issue of material fact as to a fraud claim. Swallie's evidence at best demonstrates that her parents were elderly, legally blind, and did not drive. She does not claim that Rousenberg made any false representation to them or that he concealed any material facts from them. Nor does she make any claim that Rousenberg intended to mislead them. Thus, there is no evidence of record to support a fraud claim.

{¶ 45} Furthermore, there is no dispute that Rousenberg paid Francis and Helen Burkhart $500 consideration in exchange for the oil and gas rights under their property. Rousenberg's assignment states that it was "for and in consideration of the sum of one dollar ($1.00) and other valuable consideration." Additionally, Rousenberg presented his cancelled check dated October 3, 1998, for $500 to Francis and Helen as evidence of the other valuable consideration. Swallie does not dispute this evidence.

{¶ 46} "It is axiomatic that courts, as a general rule, will not inquire into the adequacy of consideration once consideration is said to exist." *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 7. Because Rousenberg presented evidence of the consideration that he had paid Francis and Helen in exchange for the oil and gas rights, the trial court did not have to conduct an inquiry into the adequacy of the consideration. Furthermore, no genuine issues of material fact exist with regard to this issue because there is no dispute that Rousenberg paid Francis and Helen consideration of $500.

{¶ 47} In sum, no genuine issues of material fact exist regarding the issues of fraud or consideration. And, as set out in Swallie's first subassignment of error, Rousenberg's assignment is superior to Swallie's interest. Therefore, the trial court properly issued a declaratory judgment that the assignment of the oil and gas rights from Francis and Helen Burkhart to Rousenberg is superior to Swallie's interest.

{¶ 48} Swallie's third subassignment of error is not actually an allegation of error. Instead, it is a preemptive argument in support of affirming the trial court's judgment that Profit Energy's oil and gas lease is null and void due to the expiration of the "paying quantities" clause. This argument will be addressed as part of Profit Energy's cross-appeal.

{¶ 49} Accordingly, Swallie's assignment of error is without merit.

{¶ 50} Profit Energy raises a single assignment of error on cross-appeal, which states:

{¶ 51} "The trial court erred in granting summary judgment to plaintiff-cross appellee because she was not entitled to judgment as a matter of law."

{¶ 52} Swallie's third subassignment of error states:

{¶ 53} "If this court determines that appellant Linda Swallie does hold superior title to appellee Carl F. Rousenberg's interest in the oil and gas rights, the court should affirm the court's determination and hold that the 1919 lease from C.J. and Rebecca Burkhart to Ohio Fuel Supply, and subsequently conveyed to Profit Energy Company, is null and void due to the expiration of the 'paying quantities' clause."

{¶ 54} Profit Energy first argues that Swallie did not have standing to challenge the validity of its oil and gas lease. It contends that once the trial court determined that Rousenberg's assignment was superior to Swallie's interest, Swallie had no interest in the mineral estate. Therefore, Profit Energy asserts that Swallie no longer had standing to raise an issue as to the validity of Profit Energy's lease.

{¶ 55} The issue of standing may not be raised for the first time on appeal. *First Horizon Home Loan Corp. v. Roberts*, 8th Dist. No. 92367, 2010-Ohio-60, at ¶10; *Portfolio Recovery Assoc., L.L.C. v. Thacker*, 2d Dist. No. 2008-CA-119, 2009-Ohio-4406, at ¶14; *Discover Bank v. Poling*, 10th Dist. No. 04AP-1117, 2005-Ohio-1543, at ¶8. The failure to raise standing in the trial court waives its review on appeal. Id.

{¶ 56} Profit Energy is raising the issue of standing for the first time on appeal. It did not raise the issue in its answer/counterclaim, nor did it raise the issue in its motion for partial summary judgment. Therefore, Profit Energy has waived the issue of standing.

{¶ 57} Second, Profit Energy argues that if standing was proper, then it has a valid lease because it is a flat-rate royalty lease and the royalties were timely paid. Profit Energy asserts that under a flat-rate lease, quantity of production is irrelevant to the expiration of the lease as long as the lessee has made the flat-rate rental payments. In support of its position, Profit Energy relies on a West Virginia case, *Bruen v. Columbia Gas Transm. Corp.* (1992), 426 S.E.2d 522. In *Bruen*, the West Virginia Supreme Court of Appeals held:

{¶ 58} "If an oil and gas lease contains a clause to continue the lease for a term 'so long thereafter as oil or gas is produced,' but also provides for 'flat-rate' rental payments, then quantity of production is not relevant to the expiration of the term of the lease if such 'flat-rate' rental payments have been made by the lessee. Therefore, in a case involving termination of such an oil and gas lease which provides 'flat-rate' rental payments, it is reversible error for a circuit court to instruct the jury that the word 'produced' in the lease means 'produced in paying quantities.'" Id. at syllabus.

{¶ 59} Profit Energy claims that the current case presents an identical situation because $50 rent was paid through 2007 to Helen Burkhart per the lease terms.

{¶ 60} In *Bruen*, the court noted that the lease in question did not require production in paying quantities in order to continue the lease term. Instead, the court stated that the lease required "flat" yearly payments of $1,200 per year regardless of any production. Id. at 525. This differs from the lease at issue in our case.

{¶ 61} "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of

lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Harris v. Ohio Oil Co.* (1897), 57 Ohio St. 118, 129.

**{¶ 62}** The lease in the present case specifically states that it is to run for a 20-year term "and so much longer thereafter as oil, gas, or their constituents *are produced in paying quantities* thereon." (Emphasis added.) And the lease only required payments to be made while the gas well was "making" certain quantities of gas. Further, the lessee was only required to make the yearly rental payments to the lessor "from the time and *while gas is marketed*." (Emphasis added.) Thus, Profit Energy and its predecessors were not required to make the $50 annual payments to the Burkharts once they stopped marketing oil and gas, which was in January 1994. This is unlike a flat-rate clause, which would require continued payment regardless. The fact that they continued to make payments after the well ceased producing in paying quantities and gas was no longer being marketed does not operate to convert the clear terms of the production lease into a flat-rate lease.

**{¶ 63}** Generally, "[i]f after the expiration of the primary term the conditions of the secondary term are not continuing to be met, the lease terminates by the express terms of the contract herein and by operation of law and revests the leased estate in the lessor." *Am. Energy Serv. v. Lekan* (1992), 75 Ohio App.3d 205, 212. In this case, the primary term of the lease expired in 1939. The lease term continued under the

secondary term until the well ceased producing in paying quantities in January 1994. At that time, the lease terminated and the interest revested itself in the Burkharts.

{¶ 64} Accordingly, Profit Energy's sole cross-assignment of error is without merit.

{¶ 65} For the reasons stated above, the trial court's judgment is hereby affirmed.

Judgment affirmed.

VUKOVICH, P.J., and WAITE, J., concur.