[Cite as *Bond v. Halcon Energy Properties, Inc.*, 2017-Ohio-7754.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| BRYCE BOND, et al. | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS | ) | |
| | ) | CASE NO. 15 MA 0178 |
| VS. | ) | |
| | ) | OPINION |
| HALCON ENERGY PROPERTIES, INC., et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLEES | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 14 CV 287

JUDGMENT: Reversed and remanded.

APPEARANCES:
For Plaintiffs-Appellants

Attorney Eric Johnson
Attorney Nils Johnson
12 West Main Street
Canfield, Ohio 44406

For Defendant-Appellee Halcon Energy Properties, Inc.

Attorney Heather Lutz
200 Public Square, Suite 1400
Cleveland, Ohio 44114

Attorney Philip Downey
106 South Main Street, Suite 1100
Akron, Ohio 44308

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: September 21, 2017

DeGENARO, J.

**{¶1}** Plaintiffs-Appellants, Bryce and Mary Bond appeal the decision of the Mahoning County Common Pleas Court granting summary judgment in favor of Defendant-Appellee, Halcón Energy Properties, Inc., in their breach of contract and mineral trespass action involving an oil and gas lease. On appeal, the Bonds argue that the trial court erred in its interpretation of terms in the unitization clause of the Lease and therefore granting summary judgment in Halcón's favor.

**{¶2}** For the following reasons, the Bonds' first and second assignments of error are meritorious. The trial court erred by concluding a gas well (and by extension a well unit for gas) is defined in the Lease as one that is "capable of producing gas." Further, because the language in the unitization clause is ambiguous, the trial court erred in granting summary judgment in favor of Halcón. This in turn renders the remaining assignments of error moot. Accordingly, the judgment of the trial court is reversed and the matter is remanded for further proceedings.

### Facts and Procedural History

**{¶3}** On June 23, 1970, Anna J. Tims entered into an oil and gas lease with Murphy Oil Company covering property she owned in Jackson Township. Halcón is the current lessee of the deep rights under the Lease. The parties dispute who drafted the Lease.

**{¶4}** The Lease covers approximately 70 acres and permits drilling and the production of oil and gas, with a primary term of five years from the date of its execution "and as long thereafter as oil or gas or either of them is produced from said land, or from lands which said land is pooled therewith, by Lessee." Wells were drilled on the property shortly thereafter and continue to produce in paying quantities.

**{¶5}** The Lease also contains the following unitization clause:

Lessee is authorized to pool or combine the land covered by this lease, or any portion thereof, or formations thereunder, as to oil and/or gas, with any other land, lease or leases when in Lessee's judgment it is advisable to do so in order to properly develop or operate said premises, such pooling to be into a well unit or units not exceeding

approximately 40 acres for oil and not exceeding approximately 640 acres for gas. Lessee shall execute and record an instrument or instruments identifying and describing the pooled acreage. Production, drilling or reworking operations anywhere on a unit which includes all or a part of this lease shall be treated as if it were production, drilling or reworking operations under this lease. In lieu of the royalties elsewhere herein specified, Lessor shall receive from a unit so formed only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein bears to the total acreage so pooled in the particular unit involved.

{¶6} In August 2000, the Bonds purchased approximately 40.9 acres from Tims, which was subject to the Lease. The deed to the property contained the following royalty reservation, which applies only to royalties from the Lease existing at the time of that transfer, not from any future oil and gas leases on the property:

Grantor herein does hereby except and reserve unto herself her heirs and assigns all of the oil and gas royalties from the above described oil and gas lease * * * together with the free gas for domestic use in her dwelling and the right of ingress and egress to the well in order to repair, replace and maintain, by her, her heirs and assigns.

{¶7} In April 2013, Halcón drilled a horizontal well, known as the Davidson 1H, on property nearby but not owned by the Bonds. The well unit is 151.52 acres in size and runs under the Bonds' property. The Davidson 1H was expected to produce both oil and gas; and ultimately did produce large quantities of both.

{¶8} In May 2013, Halcón sought to amend all of its leases in the area to utilize larger drilling units for oil and/or gas, especially to permit drilling units larger than 640 acres for gas, which would have created the opportunity to drill more and longer lateral wells within the units. The Bonds refused to sign an amendment.

**{¶9}** The Bonds filed the instant lawsuit against Halcón seeking damages for breach of contract and trespass. The Bonds characterize the Davidson 1H as a well unit for oil, and claim that Halcón violated the terms of the unitization clause as it specifies that well units for oil may be no larger than 40 acres, warranting cancellation of the Lease. Their trespass claim is that Halcón had no permission to remove minerals beneath their property.

**{¶10}** The parties entered into a stipulated confidentiality agreement and protective order. At the conclusion of discovery Halcón filed a motion for summary judgment, arguing that the unambiguous language in the Lease classifies the well drilled by Halcón as gas well, since it is capable of producing gas; therefore, the well unit does not violate the Lease. The Bonds opposed the motion.

**{¶11}** The trial court granted summary judgment in favor of Halcón, concluding that the contract language was in fact unambiguous and that a well unit for gas, as referenced in the unitization clause, meant that it was "capable of producing gas."

**{¶12}** After the parties' briefs were filed under seal, Halcón filed a notice of bankruptcy, resulting in an automatic stay. After bankruptcy proceedings had been resolved, this case returned to the active docket on January 26, 2017.

**Interpretation of Unitization Clause**

**{¶13}** The Bonds' first and second of four assignments of error are interrelated and will be discussed together for clarity of analysis:

The trial court erred by finding that Plaintiffs' claims of breach of contract and mineral trespass must fail because the subject oil and gas well is a "gas" well since it is capable of producing gas.

The trial court erred in finding that language in the subject oil and gas lease pertaining to shut-in royalties should be used to interpret the lease's pooling and unitization clause.

**{¶14}** When reviewing a trial court's summary judgment, an appellate court applies a de novo review. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826, 829, 586 N.E.2d 1121 (9th Dist.1990). Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the nonmovant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000).

**{¶15}** Oil and gas leases are governed by Ohio contract law. "The rights and remedies of the parties to an oil or gas lease must be determined by the terms of the written instrument, and the law applicable to one form of lease may not be, and generally is not, applicable to another and different form. Such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 483, 2010-Ohio-4573, 942 N.E.2d 1109 (7th Dist.), quoting *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1897).

**{¶16}** The central issue in this appeal is the meaning of the terms "well unit for oil" and "well unit for gas" in the Lease's unitization clause. The Davidson 1H well unit is 151.52 acres. Thus, if it is an oil well, it violates the Lease because it exceeds the oil well unit limit of 40 acres. However, if it is a gas well, it does not violate the Lease because it is below the gas well unit of 640 acres.

**{¶17}** The Bonds argue that the trial court erred by concluding that the Lease is unambiguous; that a "well unit * * * for gas" in the unitization clause is one that is "capable of producing gas;" and that the Davidson 1H is thus a well unit for gas and permitted under the Lease.

**{¶18}** The Bonds note that although the trial court states that the Lease itself provides the "capable of producing gas" definition, it failed to specify *where* in the Lease it found such a definition. The Bonds surmise that the trial court was referring to the Lease's shut-in royalty clause, since that is the argument that Halcón made in its summary judgment motion. It provides in pertinent part:

* * * If a well capable of producing gas from the above described land is shut in and no gas therefrom is sold or used, such shut-in well shall, under all the provisions of this lease, be considered a well on such land producing gas in paying quantities and shall continue this lease in force at all times while such well is so shut in, whether during or after the primary term. If there be one or more such shut-in gas wells and there is no current production or operation on said land, Lessee shall pay or tender as royalty One Dollar ($1.00) per year per net royalty acre retained hereunder * * *.

**{¶19}** The Bonds not only dispute that the clause defines a gas well or well unit for gas as one that is capable of producing gas, they contend the provision is inapplicable to the unitization clause.

**{¶20}** A shut-in royalty is a payment made when a gas well, capable of producing in paying quantities, is closed down temporarily for lack of a market for the gas. The shut-in royalty clause is included in a lease to allow a lessee to keep a lease in force by the payment of a sum of money to the lessor. *See* 3 Williams & Meyers, *Oil and Gas Law*, Section 631 (2011).

**{¶21}** From the plain language of the shut-in royalty clause, it merely specifies what happens "**if** a well capable of producing gas * * * is shut in and no gas therefrom is sold or used." (Emphasis added.) It does not define a gas well, or by extension a well unit for gas, as one that is capable of producing gas.

**{¶22}** There are no provisions in the Lease that define a gas well or gas well unit as one that is "capable of producing gas," nor are there clauses in the Lease providing an alternative definition.

**{¶23}** "A contract is ambiguous if its terms cannot be clearly determined from a reading of the entire contract or if its terms are susceptible to more than one reasonable interpretation." *Shops at Boardman Park, L.L.C. v. Target Corp.*, 7th Dist. No. 13 MA 0188, 2016-Ohio-7283, ¶ 11. The determination of *whether* a contract is ambiguous is a question of law subject to de novo review on appeal. *Envision Waste*

*Services, LLC v. Cty. of Medina*, --- N.E.3d ----, 2017-Ohio-351, ¶ 15 (9th Dist.).

**{¶24}** As this court has explained, however,

> if the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact. [*Hoppel v. Feldman*, 7th Dist. No. 09CO34, 2011–Ohio–1183, ¶ 33], citing *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App.3d 57, 74, 740 N.E.2d 328 (4th Dist.2000). *See also Hague v. Summit Acres Skilled Nursing & Rehab.*, 7th Dist. No. 09NO364, 2010–Ohio–6404, ¶ 21. While ambiguous contracts are construed against the drafter, that "rule of construction is merely a guiding principle the court uses in determining the parties' intent after viewing the extrinsic evidence presented by the parties." *Cocca Dev. v. Mahoning Cty. Bd. of Commrs.*, 7th Dist. No. 08MA163, 2010–Ohio–3166, ¶ 27, citing *Handel's Ent., Inc. v. Wood*, 7th Dist. Nos. 04MA238, 05MA70, 2005–Ohio–6922, ¶ 104, and quoting *Beverly v. Parilla*, 165 Ohio App.3d 802, 848 N.E.2d 881, 2006–Ohio–1286, ¶ 30. Therefore, when a contract is deemed ambiguous, typically summary judgment should not be granted.

*7 Med. Sys., L.L.C. v. Open MRI of Steubenville*, 7th Dist. No. 11 JE 23, 2012-Ohio-3009, ¶ 20.

**{¶25}** The terms "well unit * * * for oil" and "well unit * * * for gas" as set forth in the unitization clause are ambiguous. Not only are they not clearly defined in the clause itself or elsewhere in the Lease, they are certainly subject to more than one reasonable interpretation.

**{¶26}** The trial court's interpretation—that a well unit for gas means it is "capable of producing gas"—is unworkable because typically wells produce both oil and gas. *See* 1 Williams & Meyers, *Oil and Gas Law*, Section 101 (2011) (emphasis removed): ("First, petroleum occurs in nature in the gaseous, liquid and solid states, usually as a gas or a liquid. Wherever it occurs as a liquid there is almost always

some gas also present in solution.") Thus, defining a well unit for gas as one capable of producing gas would render the size distinctions for oil and gas well units in the unitization clause meaningless.

**{¶27}** The parties advance several alternative interpretations of these terms. For example, Halcón cites to an email from an ODNR Public Information Officer that discusses using the gas to oil ratio as a tool to use to classify a well. However, unlike other states, Ohio does not have a statutory, administrative or common law definition to distinguish between oil and gas wells or well units.[1]

**{¶28}** Finally, the parties cannot agree about who drafted the Lease. On the second page of the Lease there is a stamp providing: "THIS INSTRUMENT PREPARED BY R. I. JONES." However, it is unclear whether this person was affiliated with Tims or with the original lessee, Murphy Oil Company. This also creates a genuine issue of material fact which precludes summary judgment. Thus, we cannot look to the rule of construction that ambiguous contracts are construed against the drafter in this instance.

**{¶29}** Thus, the terms "well unit for oil" and "well unit for gas" in the unitization clause are ambiguous and accordingly there are genuine issues of material fact regarding their meaning. The Bonds' first and second assignments of error are meritorious.

**{¶30}** This renders the Bonds' third and fourth assignments of error[2] moot,

---

[1] *See, e.g.,* " 'Gas well' means any well which: (a) Produces natural gas not associated or blended with crude petroleum oil any time during production; or (b) Produces more than ten thousand (10,000) cubic feet of natural gas to each barrel of crude petroleum oil from the same producing horizon." Ky.Rev.Stat.Ann. 353.010(10); " 'Gas well' means: (a) a well that produces natural gas only; (b) any well capable of producing at least 10,000 standard cubic feet of gas per stock tank barrel of oil per day for any calendar month; and (c) any well classed as a gas well by the board for any reason." Mont.Adm.R. 36.22.302(35); " 'Gas well' means any well that produces or appears capable of producing a ratio of 6,000 cubic feet (6 Mcf) of gas or more to each barrel of oil, on the basis of a gas-oil ratio test." 9 Va.Adm.Code 15-20-10.

[2] These assignments of error assert:

and thus we will not address them. *See* App.R. 12(A)(1)(c).

**{¶31}** Accordingly, the judgment of the trial court is reversed, and the case remanded for further proceedings.

Donofrio, J., concurs.

Robb, P. J., concurs.

---

The trial court erred in interpreting the subject oil and gas lease by failing to apply common, ordinary meanings to the words used therein, and by failing to construe ambiguous language against the maker of the lease.

The trial court erred, in interpreting the provisions of the lease's pooling and unitization clause, by focusing upon the results of the well drilled, rather than focusing on the facts and circumstances existing at the time the drilling unit was created.