[Cite as *Nau v. Stonebridge Operating Co.*, 2019-Ohio-3647.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

HERMAN AND BETTY NAU,

Plaintiffs-Appellees,

v.

STONEBRIDGE OPERATING COMPANY, LLC ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 NO 0466**

---

Civil Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 213-0151

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Ethan Vessels,* Fields, Dehmlow and Vessels, 309 Second Street, Marietta, Ohio 45750, and *Atty. Andrew Lycans*, Critchfield, Critchfield, and Johnston, 225 North Market Street, P.O. Box 599, Wooster, Ohio 44691, for Plaintiffs-Appellees and

*Atty. Daniel Corcoran*, Theisen Brock, 424 Second Street, Marietta, Ohio 45750, for Defendants-Appellants.

Dated:  September 6, 2019

**D'APOLITO, J.**

**{¶1}** Defendants-Appellants, Stonebridge Operating Company, LLC ("Stonebridge"), Positron Energy Resources, Inc. ("Positron"), SEOR LLC ("SEOR"), and W.H. Haas Family Ltd. ("Haas")(collectively "Appellants"), appeal the decision of the Noble County Court of Common Pleas entering summary judgment in favor of Plaintiffs-Appellees, Herman and Betty Nau ("Naus"), and Intervening Plaintiff-Appellee, Siltstone Resources, LLC ("Siltstone")(collectively "Appellees") in this action seeking a declaratory judgment that an oil and gas lease expired under its own terms due to lack of production in paying quantities.   The oil and gas lease at issue contains a habendum clause with a primary term of twenty years and a secondary term of indefinite duration, which continues "so much longer thereafter as oil, gas, or their constituents are produced in paying quantities, thereon, all of that certain tract of land * * *."

**{¶2}** Appellants contend that Appellees failed to demonstrate a lack of production in paying quantities with respect to the entire leasehold.  Appellees counter that the affidavit offered in support of Appellants' opposition brief to the original motion for summary judgment is defective, because the relevant portions of the affidavit are predicated upon the affiant's belief rather than his personal knowledge.  Because the record contains undisputed evidence that the leasehold contained only one well, and the well did not produce any oil or gas for virtually six years, we affirm the entry of summary judgment in favor of Appellees.

**STANDARD OF REVIEW**

**{¶3}** This appeal is from a trial court judgment resolving a motion for summary judgment.  An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Before summary judgment can be granted, the trial court must determine that:  (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can

come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶4}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Doe v. Skaggs*, 7th Dist. Belmont No. 18 BE 0005, 2018-Ohio-5402, ¶ 11. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

**{¶5}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. The proper procedure for introducing evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate it by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Rhodes v. Sinclair*, 7th Dist. Mahoning No. 08-MA-23, 2012-Ohio-5848, ¶ 50.

**{¶6}** Civ.R. 56(E) requires that "sworn or certified copies of all papers referred to in the affidavit be attached and is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions." *Id.*, quoting *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981). The referenced papers may also be "sworn or certified" by a certification contained within the paper itself. *Id.* Unauthenticated documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and may not be considered

by the trial court in ruling on a motion for summary judgment. *Id., see also Sintic v. Cvelbar,* 11th Dist. Lake No. 95-L-133, 1996 WL 649137 (July 5, 1996), *5.

## FACTS AND PROCEDURAL HISTORY

{¶7} On May 7, 1993, Freda P. Noll ("Noll") transferred 58 acres of property in Sections 6 and 7 of Enoch Township in Noble County to the Naus, but reserved the mineral rights in the subject property for a period of twenty years from the date of the deed. The 58-acre tract was encumbered by an oil and gas lease, which covers 310 acres in Noble County, and was executed in 1940 by Noll's predecessors-in-interest ("Lease"). The Lease specifically states that it is inapplicable to ten acres surrounding a gas well operated by Smithberger. Pursuant to the habendum clause, the primary term of the Lease is twenty years and the secondary term is indefinite, continuing:

> So much longer thereafter as oil, gas, or their constituents are produced in paying quantities, thereon, all of that certain tract of land situate in Section No. 7, Township of Enoch, County of Noble, and State of Ohio * * *containing Three hundred and ten acres (310), more or less, being all the land owned by Lessor in said Township * * *.

{¶8} On August 15, 2013, the Naus filed a complaint alleging that they own 58 acres located in Sections 6 and 7 of Enoch Township, Noble County, Ohio, which "constitutes a portion of a 147-acre tract, which constitutes a portion of a 310-acre tract held under the original lease." (Compl. ¶ 2, 4.) The Naus further alleged that the Noll C. and Baker C. Well #1 ("Baker #1") was drilled in 1975 and was the only well "located on the original 147-acre tract held by the subject lease." (Compl. ¶ 9.) Positron is the successor-in-interest to the lessee. Stonebridge is the well operator. They filed their answer on September 17, 2013.

{¶9} On September 16, 2013 Positron and Stonebridge responded to the Nau's first set of interrogatories, requests for admissions, and requests for production of documents ("discovery responses"). When asked to state the name and API number for every well located on the property that is subject to this litigation that has produced oil or gas, or both, Positron and Stonebridge responded, "Noll C and Baker C #1 API #:

34121217790000 <u>There may be other wells on the Lease</u>." (Emphasis added). When asked to state the name and address of every person or entity that claims an interest in the oil and gas <u>lease</u> that is the subject of this litigation, Positron and Stonebridge responded, "N/A." (Emphasis in original).

**{¶10}** In response to a series of interrogatories requesting production and sale information for the well or wells on the subject lease property, Positron and Stonebridge provided a copy of a Well Completion Report dated March 7, 2013, which documented production from 1985 to 2011 for Baker #1 ("2013 Report"). According to the 2013 Report, no gas was produced from 2000 to 2005. In response to a series of interrogatories regarding gas production, Positron and Stonebridge conceded that no gas had been produced from Baker #1 in 2000 through 2005. Finally, in response to a series of interrogatories regarding the nonpayment of royalties from 2000 to 2012, Positron and Stonebridge responded that royalties had been held in suspense.

**{¶11}** On October 4, 2013, the Naus filed their original summary judgment motion, which was predicated upon the 2013 Report and the discovery responses. In both the original Rule 56 motion and renewed motion before us in this appeal, Appellees assert that Baker #1 was the only well on the 147-acre portion of the leasehold, rather than the only well on the entire leasehold, and that Baker #1 produced no gas from 2000-2005.

**{¶12}** On February 24, 2014, Positron and Stonebridge filed a motion for extension of time to file their response brief. On February 25, 2014, they were granted an extension of fifteen days after a mediation to be scheduled in April was completed to file their opposition brief.

**{¶13}** The Naus conveyed an undivided one-half interest in the mineral rights to Siltstone on May 15, 2014. On October 7, 2014, Siltstone filed a motion to intervene pursuant to Civ. R. 24. On October 7, 2014, the trial court entered a stipulated order granting Siltstone's motion to intervene.

**{¶14}** On February 25, 2016, roughly twenty-eight months after the original summary judgment motion was filed, the trial court scheduled a non-oral hearing on the motion for April 29, 2016. Positron and Stonebridge filed their opposition brief on April 28, 2016. That same day, Positron and Stonebridge filed ODNR locator maps for three wells – the Baker #1, "C. & F. Noll #1," and "Dimmerling 1," and the discovery responses.

The ODNR maps provide the location of the wells, but do not reflect the parameters of the 310-acre leasehold. One of the wells may be the gas well operated by Smithberger excepted from in the Lease, although it is not clear from the record.

{¶15} Several documents are attached to the discovery responses: (1) a "Master Suspense List" dated September 10, 2013 for two wells identified as C113717 (from 200509 to 201303) and C113728 (from 200104 to 201206), which reflects a total net revenue of $14,420.72 to Noll, whose reservation in the minerals terminated on May 7, 2013; (2) a series of invoices from various repair companies and vendors to Stonebridge for repairs and parts for Baker #1 (identified on the invoices as "Baker/Noll" or "C113717"); (3) unsigned annual "Returns of Oil and Gas Properties," which reflect total tax assessments paid by Stonebridge on behalf of Noll in the amounts of $175.70 in 2007; $186.72 in 2008; $133.30 in 2009; $105.57 in 2010; $61.92 in 2011; and $42.01 in 2012 (page 2 mislabeled "2011"). The forms also reflect tax assessments paid by Stonebridge on behalf of "B&N Coal" and "John W. Cushing"; (4) an employee incident report dated November 17, 2009, which states that Mr. Nau approached a Stonebridge employee on the previous day and demanded that a check be issued, otherwise Mr. Nau would make the employee "shut [Baker #1] in." According to the incident report, Mr. Nau admitted that he had manually disabled Baker #1, and intended to continue to manually disable the Well until he received a check; and (5) a bank statement and cancelled check, dated July 31, 2002, in the amount of $1,142.35 to the Naus as "Trustees of the Herman J. and Betty Nau Living Trust, Freda P. Noll, Trustee of the Freda P. Noll Living Trust."

{¶16} Positron and Stonebridge also filed the affidavit of Stonebridge's manager, Eddy Biehl on April 28, 2016. Biehl's affidavit is written in the third person and based on personal knowledge "except as noted." In his affidavit, Biehl concedes that royalties are due on Baker #1, and states that Stonebridge is "ready, willing, and able to pay [the] royalties upon being provided proper documentation including a completed [Form] W-9, which has previously been sought." Next, Biehl avers that "[Baker #1] is capable of producing in paying quantities when [Stonebridge] has been allowed to operate [it], but that [Stonebridge employees] have found [Baker #1] to be shut-in on a number of occasions not attributable to any act of any of [Stonebridge's employees]." (*Id.* ¶ 3-4). Biehl further avers that "[Baker #1] is capable of producing in paying quantities and will

continue to pay in producing quantities if [Stonebridge] is allowed to operate [it]." (*Id.* ¶ 6).

**{¶17}** The remainder of Biehl's averments read:

7.      Based upon public records it is believed there are other wells operating and producing that may be in the 300 acre tract but he has not seen certified title work to that effect.

8.      That [Baker #1] is believed to have been the subject of a forfeiture action or similar [sic] over alleged period of non-production. Payments were made to [Appellees] as a part of that litigation as noted in the 2002 check filed with [the trial court.] The bank statements produced and filed with [the trial court] show this check was cashed.

9.      He believes but has not verified that this same 300 acre tract may be subject to a lease of B&N Coal.

(*Id.* ¶ 7-9).

**{¶18}** In their opposition brief to the original motion for summary judgment, Positron and Stonebridge argued that the Naus sought a "defacto partition," because the oil and gas lease covered 300 acres of land. (4/28/16 Opp. Br., p. 5). Positron and Stonebridge further argued that necessary parties had not been joined, including SEOR and Haas. Appellants cited the Biehl affidavit for the assertion that Haas, through SEOR, appears to have the deep rights in the Lease, despite the fact that the affidavit does not contain the foregoing averment. Positron and Stonebridge asserted that Appellees "bear the burden of proof, but have remained silent as to other wells or those having interest in the entire 300 acre tract." *Id.* at 2. Positron and Stonebridge further asserted that Northwood Energy had a producing well on an adjoining tract, and added "[i]t is believed that B&N Coal is also operating a well in the vicinity but it has not been verified that it is on [the Lease]." *Id.* at 2.

Case No. 19 NO 0466

**{¶19}** Positron and Stonebridge argued that nonproduction of the Well prior to 2002 had been the subject of a previous lawsuit, and the matter had been settled with a monetary payment to Appellees, demonstrated by the check attached to the discovery responses, which is not reflected in the 2013 report. Positron and Stonebridge further argued that Appellees had been receiving gas for domestic use, and were owed more than $14,000.00 in royalties that were being held in a suspense account because Appellees failed to provide "the appropriate company required and tax law mandated forms to allow payment."

**{¶20}** Finally, Positron and Stonebridge asserted that they had invested financially in Baker #1, citing the invoices for repair and replacement parts, which were attached to their discovery responses. They cited the employee incident report to show that the Naus were aware of the work performed and the continuing financial investment made by Positron and Stonebridge in Baker #1.

**{¶21}** Because an adequate remedy at law was available – the payment of rents and royalties – Positron and Stonebridge concluded that forfeiture should not be granted. They cited the ODNR locator maps to demonstrate that there had been significant production from Baker #1, Mr. Nau was responsible for periods that the Well was "shut in," and that a brief period of nonproduction prior to 2002 was the subject of a settlement of a previous lawsuit. On May 19, 2016, Siltstone joined in the Naus' motion for summary judgment.

**{¶22}** During a status conference on August 1, 2018, the trial court ordered the parties to mediation. The trial court further ordered Positron and Stonebridge to provide the names of those persons or entities claimed to have an interest in the "deep rights" together with the volume and page of the recorded instruments creating the interest. Positron and Stonebridge were further ordered to provide "[t]he name and location of any wells (other than the one in question) that are or were in existence on the leased premises." (8/7/18 J.E., p. 1).

**{¶23}** On September 5, 2018, Positron and Stonebridge filed documents evidencing potential title in SEOR and Haas. They made no reference to additional wells in the pleading, and did not rely on any of the documents filed on September 5, 2018 to demonstrate the existence of additional wells on the leasehold. Appellees filed a response

on September 17, 2018, in which they argued that Appellees failed to comply with the trial court's instructions regarding volume and page number.

{¶24} On September 19, 2018, the trial court summarily overruled the original motion for summary judgment. SEOR and Hass were joined as parties pursuant to an agreed order dated October 12, 2018. SEOR and Hass filed their answer on October 26, 2018.

{¶25} Appellees filed their renewed motion for summary judgment, which is the subject of this appeal, on November 5, 2008. Appellants did not file an opposition brief to the renewed motion for summary judgment. On December 11, 2018, the trial court entered summary judgment in favor of Appellees and issued an order declaring termination of the Lease in its entirety. The trial court predicated summary judgment on "[Appellants'] admission of ceased production for a period of five years" and "the lack of any memorandum opposing [the motion]." (12/11/19 J.E., p. 2-3). This timely appeal followed.

## ANALYSIS

## ASSIGNMENT OF ERROR

### THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS'-APPELLEES' MOTION FOR SUMMARY JUDGMENT.

{¶26} Appellants' sole assignment of error sets forth two alternate arguments, which are addressed out of order for the purpose of clarity of analysis. First, Appellants assert that the leasehold is indivisible and Appellees were required to show a lack of production from the entire leasehold, not just the 147-acre portion, to terminate the lease. Assuming arguendo that Appellees fulfilled their obligation at the initial stage of summary judgment, Appellants argue in the alternative that they met their reciprocal obligation to show that genuine issues of material fact precluded summary judgment. *Id.* at 5. Appellants cite the Biehl affidavit and the documents attached to the discovery response to demonstrate that summary judgment was granted in error.

{¶27} Oil and gas leases are contracts, and the terms of the contract, with the law applicable to such terms, must govern the rights and remedies of the parties. *Swallie v.*

*Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573, 942 N.E.2d 1109, ¶ 61(7th Dist.), *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 129, 48 N.E. 502 (1987). The burden of proof with respect to an oil and gas lease case is not controlled by substantive oil and gas law, but, rather, by civil procedure. *Pfalzgraf v. Miley*, 2018-Ohio-2828, 116 N.E.3d 893, ¶ 32, (7th Dist.) *reconsideration denied*, 7th Dist. Monroe No. 16 MO 0005, 2018-Ohio-3595, *appeal not allowed*, 154 Ohio St.3d 1443, 2018-Ohio-4962, 113 N.E.3d 552. The party who asserts a claim in an oil and gas case carries the burden of proof, just as in any other civil case. *Id.* at ¶ 45. As a consequence, Appellees must prove nonproduction in paying quantities in this case.

**{¶28}** After the primary term of an oil and gas lease expires, the lease terminates by the express terms of the contract and by operation of law, and revests the leased estate in the lessor, if the conditions of the secondary term are not being met. *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573, 942 N.E.2d 1109 (7th Dist.), ¶ 63. Typically, the secondary term of the lease is conditioned on oil or gas being produced in paying quantities. *Dennison Bridge, Inc. v. Resource Energy, L.L.C.*, 2015-Ohio-4736, 50 N.E.3d 242, ¶ 21 (7th Dist.)

**{¶29}** Leased lands are generally considered indivisible. *Neuhart v. TransAtlantic Energy Corp.*, 2018-Ohio-4099, 121 N.E.3d 802, ¶ 11 (7th Dist.), *reconsideration granted in part*, 7th Dist. Noble No. 17 NO 0449, 2018-Ohio-5115, ¶ 11, *appeal not allowed*, 155 Ohio St.3d 1421, 2019-Ohio-1421, 120 N.E.3d 867, ¶ 11. In other words, a lease remains in effect so as long as oil, gas and other minerals are being produced on any of the lands described in the instrument. *Bibler Bros. Timber Corp. v. Tojac Minerals, Inc.*, 281 Ark. 431, 434-35, 664 S.W.2d 472, 474 (1984).

**{¶30}** Accordingly, "in the absence of anything in the lease to indicate a contrary intent, production on one tract will operate to perpetuate the lease as to all tracts described therein and covered thereby." *Mathews v. Sun Oil Co.*, 425 S.W.2d 330, 333 (Tex.1968). One example of contrary intent is a "Pugh clause," which allows land to become divisible when the lease is held by production of less than the whole acreage. *Neuhart* at ¶ 63. A Pugh clause allows the lease to terminate with respect to the nonproducing acreage and remain in effect as to the producing acreage. *Id.*

**{¶31}** The Lease at issue here does not contain a Pugh clause and Appellants do not cite any language to establish an intent by the parties to the Lease to make the leasehold interest divisible based on production. As a consequence, we find that Appellees' burden of proof on summary judgment was to demonstrate an absence of material fact as to lack of production in paying quantities on the entire leasehold.

**{¶32}** Appellants argue that Appellees failed to carry their burden of proof because the renewed summary judgment motion asserts no genuine issue of material fact regarding non-production from 2000 to 2005 on the 147-acre portion of the leasehold, rather than the entire 310-acre leasehold. Appellants appear to argue that the discovery responses referred to the 147-acre portion of the 310-acre leasehold, rather than the leasehold in its entirety.

**{¶33}** However, the trial court's August 9, 2018 Judgment Entry ordered Positron and Stonebridge to provide "[t]he name and location of any wells (other than the one in question) that are or were in existence <u>on the leased premises."</u> (8/7/18 J.E., p. 1)(Emphasis added). In other words, Positron and Stonebridge were ordered by the trial court to identify all of the wells on the entire leasehold, not just the 147-acre portion. Positron and Stonebridge did not identify any additional wells in their September 5, 2018 pleading.

**{¶34}** Positron, the successor-in-interest to the original lessee, was the party most likely to have knowledge of the actual number of wells operating on the leasehold. Stonebridge is the well operator. Because Positron and Stonebridge did not identify any additional wells, we find that the undisputed evidence in the record establishes that Baker #1 was the only well on the entire leasehold.

**{¶35}** Appellants advance a second argument, that the evidence offered in support of their opposition brief to the original motion for summary judgment created genuine issues of material fact. Appellants argue that they demonstrated the possible existence of other wells on the leasehold, royalties from the relevant time period held in a suspense account, and that nonproduction by Baker #1 was the subject of a prior lawsuit.

**{¶36}** To the contrary, Appellants conceded in their discovery responses that Baker #1 produced no oil or gas from 2000 to 2005, and the evidence offered in support

of their opposition brief to the original motion for summary judgment does not create a genuine issue of fact. First, the relevant portions of the Biehl affidavit relating to the existence of wells on the leasehold and the prior litigation are predicated upon his belief, rather than his personal knowledge. "Personal knowledge" is "'[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, at ¶ 26, quoting Black's Law Dictionary (7th Ed.Rev.1999) 875. Personal knowledge does not depend on outside information or hearsay. *Residential Funding Co., L.L.C. v. Thorne*, 6th Dist. Lucas No. L-09-1324, 2010-Ohio-4271, at ¶ 64, *Modon v. Cleveland* (Dec. 22, 1999), 9th Dist. Medina No. 2945-M, 1999 WL 1260318, at *2.

**{¶37}** Ohio courts have held that personal knowledge may be inferred from the contents of an affidavit, *see Carter v. U-Haul Internatl.*, 10th Dist. Franklin No. 09AP–310, 2009-Ohio-5358, at ¶ 10; *Flagstar Bank F.S.B. v. Diehl*, 5th Dist. Ashland No. 09 COA 034, 2010-Ohio-2860, at ¶ 25. In this case, however, Biehl concedes that his averments are based on belief rather than personal knowledge. Accordingly, the content of the Biehl affidavit predicated upon his belief is insufficient to create genuine issues of material fact.

**{¶38}** We recognized in *Potts v. Unglaciated Industries, Inc.*, 7th Dist. Monroe No. 15 MO 0003, 2016-Ohio-8559, 77 N.E.3d 415, that the failure to comply with Civ.R. 56(E)'s personal knowledge requirement is waived when the opposing parties do not move to strike the affidavit or otherwise object to the affidavit in response to a request for summary judgment. *Id.* at ¶ 73, citing *Discover Bank v. Damico*, 11th Dist. Lake No. 2011-L-108, 2012-Ohio-3022, ¶ 14-15; *see also Chase Bank USA, NA v. Lopez*, 8th Dist. Cuyahoga No. 91480, 2008-Ohio-6000, ¶ 16 (affidavit attached to a summary judgment motion that did not meet the requirements of Civ.R. 56(E) cannot be raised for the first time on appeal). Here, Biehl did not simply omit the language regarding personal knowledge, but, instead, conceded that the relevant portions of his affidavit are based on belief. For that reason, we decline to consider the content of the affidavit as a matter of law.

**{¶39}** Next, although the documents attached to the discovery requests are not authenticated, Ohio courts have held that items produced in discovery are implicitly

authenticated by the act of production by the opposing party. *See, e.g.*, *Stumpff v. Harris*, 2d Dist. Montgomery No. 26214, 2015-Ohio-1329, 31 N.E.3d 164, ¶ 35 (applying totality of the circumstances surrounding the documents' production, including, but not limited to, the specificity of the discovery request, the nature of the documents, and the party responding to the discovery request); *Welch v. Bissell*, N.D.Ohio No. 1:12CV3108, 2013 WL 6504679, *4 (Dec. 11, 2013) (video was properly authenticated by affidavit from counsel that the video was produced by the opposing party during discovery); *Churches of Christ in Christian Union v. Evangelical Ben. Trust*, S.D.Ohio No. C2:07CV1186, 2009 WL 2146095, *5 (July 15, 2009) ("Where a document is produced in discovery, 'there [is] sufficient circumstantial evidence to support its authenticity' at trial.") Further, in the absence of an objection based on admissibility by the opposing party, a court of appeals may consider unauthenticated documents in order to determine whether summary judgment is appropriate. *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 122 Ohio St.3d 260, 2009-Ohio-2871, 910 N.E.2d 455, ¶ 17, citing *State ex rel. Spencer v. E. Liverpool Planning Comm.*, 80 Ohio St.3d 297, 301, 685 N.E.2d 1251 (1997).

**{¶40}** Turning to the documents attached to the discovery responses, the master suspense list shows royalties held in suspense from Baker #1 from September of 2005 to March of 2013. The master suspense list only establishes production during four months of the alleged six-year period of nonproduction. Next, the tax payments made by Stonebridge from 2008 to 2012 on behalf of Noll establish assessments incurred well after 2005. Further, to the extent the employee incident report documents that Mr. Nau had manually disabled Baker #1 in the past, it provides no time frame. The encounter occurred in November of 2009, roughly four years after the alleged period of nonproduction at issue in this case. Finally, the bank statement and cancelled check, dated July 31, 2002, establish a payment in the amount of $1,142.35 to the Naus as "Trustees of the Herman J. and Betty Nau Living Trust, Freda P. Noll, Trustee of the Freda P. Noll Living Trust," but contain no explanation for the payment. Biehl avers that nonproduction by Baker's 1 was "believed" to be the subject of a forfeiture action.

**{¶41}** Having reviewed the Biehl affidavit and the documents attached to the discovery responses, we find that Appellants failed to offer evidence regarding additional wells on the leasehold or that Baker #1 produced oil and gas in paying quantities from

2000 to September of 2005. In other words, the trial court did not err in concluding that there was no genuine issue of material fact based on the evidence offered in support of the opposition brief to the original motion for summary judgment.

## CONCLUSION

**{¶42}** In summary, Appellees had the burden of proof to show a lack of production in paying quantities on the entire leasehold in order to demonstrate the expiration of the Lease on its own terms pursuant to the habendum clause. Despite the fact that the renewed motion for summary judgment asserts no production in paying quantities from 2000 to 2005 on the 147-acre portion of the 310-acre leasehold, the undisputed facts in the record establish that Baker #1 is the only well on the entire leasehold, and Baker #1 did not produce any oil and gas from 2002 to September of 2005. Accordingly, Appellants' sole assignment of error has no merit, and the judgment entry of the trial court finding that the Lease expired on its own terms due to lack of production in paying quantities is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 19 NO 0466

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**